Exhibit "1"

LOAN #:

## FIXED/ADJUSTABLE RATE NOTE
(One-Year Treasury Index-Rate Caps)

THIS NOTE PROVIDES FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

JANUARY 16, 2004               EL DORADO HILLS,                      CALIFORNIA
[Date]                              [City]                              [State]

                        958 LARKSPUR ROAD, OAKLAND, CA 94610
                              [Property Address]

**1. BORROWER'S PROMISE TO PAY**
   In return for a loan that I have received, I promise to pay U.S.      $760,000.00      (this amount is called "Principal"), plus interest, to the order of Lender. Lender is  PATELCO CREDIT UNION, A CALIFORNIA CORPORATION.

I will make all payments under this Note in the form of cash, check or money order.
   I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**
   Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of  3.8754.  The interest rate I will pay may change in accordance with Section 4 of this Note.
   The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**3. PAYMENTS**
   (A) Time and Place of Payments
   I will pay principal and interest by making a payment every month.
   I will make my monthly payments on the    1ST    day of each month beginning on  MARCH 1, 2004.
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on     FEBRUARY 1, 2034,      I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
   I will make my monthly payments at   PATELCO CREDIT UNION
                                        5499 SUNRISE BLVD 2NDFLR
                                        CITRUS HEIGHTS, CA 95610
or at a different place if required by the Note Holder.
   (B) Amount of My Initial Monthly Payments
   Each of my initial monthly payments will be in the amount of U.S.    $3,573.80.    This amount may change.
   (C) Monthly Payment Changes
   Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

**4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES**
   (A) Change Dates
   The initial fixed interest rate I will pay will change to an adjustable interest rate on the    1ST    day of  FEBRUARY, 2007    and the adjustable interest rate I will pay may change on that day every    12TH    month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate and each date on which my adjustable interest rate could change, is called a "Change Date."
   (B) The Index
   Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the weekly average yield on United States Treasury securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board. The most recent Index figure available as of the dat...      ...nge Date is called the "Current Index."
   If the Index is no longer available, the Note Ho...      ...omparable information. The Note Holder will give me notice of it.
   (C) Calculation of Changes
   ..  Before each Change Date, the Note Holder will c...      The Note
SEVEN-EIGHTHS                   percent                              ) Subject
Holder will then round the result of this addition to th...      ...nge Date
to the limits stated in Section 4(D) below, this rounded...      ...e unpaid
   The Note Holder will then determine the amount of...      ...ostantially
principal that I am expected to owe at the Change Date...
equal payments. The result of this calculation will be
   (D) Limits on Interest Rate Changes
   The interest rate I am required to pay at the first C...      ...less than
    2.8754.    Thereafter, my adjustable interest rate...      ...nge Date
by more than    TWO                                                  ...e rate of
interest I have been paying for the preceding           ...      ...ater than
    9.8754.

**EXHIBIT "1"**

MULTISTATE FIXED/ADJUSTABLE RATE NOTE-ONE-YEAR TRE...
Form 3522 1/01
© 1999-2003 Online Documents, Inc.                                    P...

LOAN #:

**(E) Effective Date of Changes**
My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**
The Note Holder will deliver or mail to me a notice of any changes in my initial fixed interest rate to an adjustable interest rate and of any changes in my adjustable interest rate before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5. BORROWER'S RIGHT TO PREPAY**
I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.
I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

**6. LOAN CHARGES**
If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7. BORROWER'S FAILURE TO PAY AS REQUIRED**
**(A) Late Charges for Overdue Payments**
If the Note Holder has not received the full amount of any monthly payment by the end of      15      calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be     5.000%    of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**
If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.
**(C) Notice of Default**
If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.
**(D) No Waiver By Note Holder**
Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.
**(E) Payment of Note Holder's Costs and Expenses**
If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8. GIVING OF NOTICES**
Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.
Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**
If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10. WAIVERS**
I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. UNIFORM SECURED NOTE**
This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises

Initials:

MULTISTATE FIXED/ADJUSTABLE RATE NOTE-ONE-YEAR TREASURY INDEX Single Family-Fannie Mae Uniform Instrument
Form 3322 1/01
© 1999-2003 Online Documents, Inc.                                        Page 2 of 3

LOAN #:

that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of these conditions read as follows:

(A) Until my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument shall read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(B) When my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument described in Section 11(A) above shall then cease to be in effect, and Uniform Covenant 18 of the Security Instrument shall instead read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_____ (Seal)
GLORIA MORGAN-AUSTIN

_____ (Seal)
DARREN D. AUSTIN

[Sign Original Only]

MULTISTATE FIXED/ADJUSTABLE RATE NOTE-ONE-YEAR TREASURY INDEX-Single Family-Fannie Mae Uniform Instrument
Form 3522 1/01
© 1998-2003 Online Documents, Inc.        Page 3 of 3        F3522NOT 0307

Case: 19-41221    Doc# 26-2    Filed: 06/26/19    Entered: 06/26/19 13:59:16    Page 4 of 97

Exhibit "2"

2004031849          01/27/2004 08:30 AM
OFFICIAL RECORDS OF ALAMEDA COUNTY
PATRICK O CONNELL
RECORDING FEE          57 00

17   PGS

RECORDING REQUESTED BY
FIRST AMERICAN TITLE

After Recording Return To:
PATELCO CREDIT UNION
5499 SUNRISE BLVD 2NDFLR
CITRUS HEIGHTS, CA 95610

A9 2

17

50

Title Order No.:
Escrow No.:

———————— [Space Above This Line For Recording Data] ————————

LOAN #: .

## DEED OF TRUST

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document which is dated  JANUARY 16, 2004,        together with all Riders to this document.

(B) "Borrower" is  GANICE MORGAN-AUSTIN AND DARREN D. AUSTIN  WIFE AND HUSBAND AS JOINT TENANTS.

Borrower is the trustor under this Security Instrument
(C) "Lender" is  PATELCO CREDIT UNION.

EXHIBIT "2"

CALIFORNIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMEN
© 1999-2002 Online Documents, Inc.                    Page 1 of 12

LOAN #:

Lender is a CORPORATION                           organized and existing under the laws of
CALIFORNIA.                                       Lender's address is 3499 SUNRISE BLVD
2NDFLR, CITRUS HEIGHTS, CA 95610.

Lender is the beneficiary under this Security Instrument.
(D) "Trustee" is T.D. SERVICE COMPANY.

(E) "Note" means the promissory note signed by Borrower and dated JANUARY 16, 2004.          The Note
states that Borrower owes Lender ******************SEVEN HUNDRED SIXTY THOUSAND AND NO/100
****************************************************** Dollars (U.S   $760,000.00   )
plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later
than FEBRUARY 1, 2034.
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under
the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be
executed by Borrower [check box as applicable]:

☒ Adjustable Rate Rider        ☐ Condominium Rider              ☐ Second Home Rider
☐ Balloon Rider                ☐ Planned Unit Development Rider ☐ Other(s) [specify]
☐ 1-4 Family Rider             ☐ Biweekly Payment Rider

(I)  "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and
administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(J)  "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that
are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(K)  "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or
similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic
tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is
not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire
transfers, and automated clearinghouse transfers.
(L)  "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any
third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or
destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu
of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
(N)  "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
(O)  "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus
(ii) any amounts under Section 3 of this Security Instrument.
(P)  "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2001 et seq.) and its implementing
regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or
successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA"
refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the
Loan does not qualify as a "federally related mortgage loan" under RESPA.
(Q)  "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party
has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications
of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3005 1/01        Initials:
© 1999-2002 Online Documents, Inc.                      Page 2 of 12                                      CAUDEDL

LOAN #:

Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the  COUNTY                                    [Type of Recording Jurisdiction]
of  ALAMEDA                               [Name of Recording Jurisdiction]
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF
APN #: 011-0890-004

which currently has the address of  958 LARKSPUR ROAD, OAKLAND,

[Street] [City]

California      94610         ("Property Address");
            [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1.   Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument

CALIFORNIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3005 1/01
© 1999-2002 Online Documents, Inc.                       Page 3 of 12

Initials: _____
                    CAUDEDL

LOAN #:

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note, (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3005 1/01
© 1999-2002 Online Documents, Inc.       Page 4 of 12      Initials: CACDEDL

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.   Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.   Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT     Form 3005 1/01
© 1999-2002 Online Documents, Inc.                    Page 5 of 12                   Initials: ___

LOAN #[ ]

promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.  Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.  Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.  Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence

9.  Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

CALIFORNIA - Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3005 1/01    Initials:
© 1999-2002 Online Documents, Inc.                    Page 6 of 12                            CAUDEOL

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance. Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3005 1/01
© 1999-2002 Online Documents, Inc                    Page 7 of 12

Initials:

LOAN #

opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

CALIFORNIA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3005 1/01
© 1999-2002 Online Documents, Inc.          Page 8 of 12

Initials

LOAN #:

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender

14. Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. Governing Law; Severability; Rules of Construction. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa, and (c) the word "may" gives sole discretion without any obligation to take any action.

17. Borrower's Copy. Borrower shall be given one copy of the Note and of this Security Instrument

18. Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3005 1/01
© 1999-2002 Online Documents. Inc.        Page 9 of 12      Initials

LOAN #:

all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. Borrower's Right to Reinstate After Acceleration. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b ) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate, or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection, (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3005 1/01
© 1999-2002 Online Documents, Inc.        Page 10 of 12          Initials:

LOAN #:

residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products)

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3005 1/01
© 1999-2002 Online Documents, Inc.             Page 11 of 12

Initials: _____

LOAN #:

25. Statement of Obligation Fee. Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
GAUICE MORGAN AUSTIN

_____ (Seal)
DARREN D. AUSTIN

State of CALIFORNIA                                    County of: Alameda

On 1-17-04 ____, before me, Beverly Claire Balee ____, personally appeared Ganice Morgan-Austin & Darren D. Austen

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____
Beverly Claire Balee


BEVERLY CLAIRE BALEE
Commission # 1420285
Notary Public - California
Alameda County
My Comm. Expires Jun 23, 2007

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3005 1/01
© 1999-2002 Online Documents, Inc.                Page 12 of 12                CAUDEDL

Case: 19-41221   Doc# 26-2   Filed: 06/26/19   Entered: 06/26/19 13:59:16   Page 17 of 97



ORD
REFERENCE
ESCROW OFFICER: B
ESCROW N

## DESCRIPTION

THE LAND REFERRED TO IN THIS DESCRIPTION SITUATED IN THE STATE OF CALIFORNIA, COUNTY OF ALAMEDA, CITY OF OAKLAND, AND IS DESCRIBED AS FOLLOWS:

BEGINNING AT THE POINT OF INTERSECTION OF THE NORTHWESTERN LINE OF SAID LARKSPUR ROAD, WITH THE LINE DIVIDING LOTS 37 AND 38, AS SAID ROAD AND LOTS ARE SHOWN ON THE MAP HEREIN REFERRED TO, RUNNING THENCE NORTHERLY ALONG SAID LAST MENTIONED LINE 68.77 FEET TO THE NORTHWESTERN LINE OF SAID LOT 37, THENCE WESTERLY ALONG SAID NORTHWESTERN LINE OF LOT 37, AND ALONG THE NORTHWESTERN LINE OF LOT 36, AS SHOWN ON THE MAP HEREIN REFERRED TO A DISTANCE OF 57.79 FEET TO THE NORTHEASTERN LINE OF THAT CERTAIN PIECE OR PARCEL OF LAND CONVEYED BY WM. F. SILVER, ET AL, TO EDWARD W. FUHR, ET. AL, BY DEED DATED MAY 9, 1927 AND RECORDED IN BOOK 1604 OF OFFICIAL RECORDS OF ALAMEDA COUNTY, PAGE 128; THENCE SOUTHERLY ALONG SAID NORTHEASTERN LINE OF SAID LAND AS CONVEYED 69.90 FEET, MORE OR LESS, TO A POINT ON THE SAID NORTHWESTERN LINE OF LARKSPUR ROAD, SAID POINT BEING ALSO THE POINT OF INTERSECTION OF SAID NORTHWESTERN LINE OF LARKSPUR ROAD WITH THE LINE DIVIDING SAID LOTS 36 AND 37, THENCE EASTERLY ALONG SAID LINE OF LARKSPUR ROAD, 60 FEET TO THE POINT OF BEGINNING.

BEING LOT 17 AND A PORTION OF LOT 36, AS SAID LOTS ARE SHOWN ON THE MAP OF "RESUBDIVISION OF BLOCK 10, LAKESHORE HIGHLANDS, OAKLAND, ALAMEDA COUNTY, CAL. 1924" FILED OCTOBER 20, 1924 IN BOOK 4 OF MAPS, PAGE 48, IN THE OFFICE OF THE COUNTY RECORDER OF ALAMEDA COUNTY.

Case: 19-41221   Doc# 26-2   Filed: 06/26/19   Entered: 06/26/19 13:59:16   Page 18 of 97

Exhibit "3"

Entered on Docket
November 28, 2007
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

1  SCHEER LAW GROUP, LLP
   SPENCER P. SCHEER #107750
2  JOSHUA L. SCHEER #242722
   AUSTIN D. GARNER #184022
3  REILLY D. WILKINSON #250086
   JONATHAN SEIGEL #168224
4  155 N. Redwood Drive, Suite 100
   San Rafael, CA 94903
5  Telephone: (415) 491-8900
   Facsimile: (415) 491-8910
6  FH.010-12102S

7  Attorneys for Secured Creditor
   PATELCO CREDIT UNION
8

**FILED**

NOV 2 8 2007

BANKRUPTCY COURT
OAKLAND, CA

9              UNITED STATES BANKRUPTCY COURT FOR THE

10                  NORTHERN DISTRICT OF CALIFORNIA

11                         OAKLAND DIVISION

12  GANICE MORGAN-AUSTIN and DARREN          Bk. No. 07-42148 -RJN

13  DEWAYNE AUSTIN,                          Chapter 13

14          Debtors,                         AGREED ORDER RESOLVING PATELCO
                                             CREDIT UNION'S MOTION FOR RELIEF
15                                           FROM AUTOMATIC STAY

16  MARTHA G. BRONITSKY,
                                             Date: November 28, 2007
17          Trustee.                         Time: 10:30 AM
                                             Place: Bankruptcy Court
18                                                  1300 Clay Street
                                                    Oakland, CA
19

20

21                              I. RECITAL

22       The Court, after determining that the parties were agreeable to entry of the following,

23  which terms were agreed to by PATELCO CREDIT UNION ("Secured Creditor"), through its

24  counsel JOSEPH L. SCHEER of SCHEER LAW GROUP, LLP and GANICE MORGAN-

25  AUSTIN and DARREN DEWAYNE AUSTIN., ("Debtors"), through their counsel DAVID A.

26  ARIETTA, and there being Good Cause, makes the following order:

27

28

## II. ORDER

1. IT IS ORDERED THAT commencing with the December 2007 payment and continuing thereafter, Debtors shall submit to Secured Creditor their regular monthly trust deed payments in the amount of **$3,573.80** ("**Monthly Payments**") on the First Deed of Trust and secured by the real property located at **958 Larkspur Road, Oakland, CA 94610** and which is legally described in the First Deed of Trust attached to Secured Creditor's Motion for Relief from Automatic Stay filed in this matter ("**Property**"). All payments shall be received no later than end of the applicable grace period contained in the Note following the loan payment due date each month as stated in the Note. In addition, Debtor shall comply with all other terms and conditions of their trust deed obligation with Secured Creditor, including a requirement that Debtor maintain any post-petition payments, to keep in effect required insurance policies with Secured Creditor listed as an additional loss payee, and payment of real property taxes and submitting late charges if payments are not received within the applicable grace period specified in the subject Promissory Note. The Monthly Payments shall be sent directly to **PATELCO CREDIT UNION at 156 SECOND STREET, SAN FRANCISCO, CA 94105.**

2. IT IS FURTHER ORDERED THAT Debtors shall cure the post-petition default owing to Secured Creditor in the total amount of $15,659.96 ("**Delinquency**") representing the missed payments for the months of August 2007, September 2007, October 2007, and November 2007, and also representing Secured Creditor's attorney's fees for the filing of Secured Creditor's motion for relief in this matter in the amount of $650.00. Debtors shall make direct payments to Secured Creditor in the amount of **$1,786.90** ("**Delinquency Payments**") to cure the Delinquency. Delinquency Payments shall be made directly to Secured Creditor by the close of business on the 15th of each month, commencing on December 15, 2007 and continuing thereafter until the Delinquency is paid in full. The Delinquency Payments shall be sent directly to **PATELCO CREDIT UNION, 156 SECOND STREET, SAN FRANCISCO, CA 94105.**

1      3. IT IS FURTHER ORDERED THAT Debtors shall maintain timely payments to the

2 Chapter 13 Trustee for disbursement to Secured Creditor on its claim for pre-petition arrearages.

3 Any payments made by Debtors to the Trustee for the benefit of Secured Creditor, prior to the

4 confirmation of Debtors' plan shall be disbursed to Secured Creditor, notwithstanding the

5 dismissal or conversion of this case. In the event of a dismissal or conversion any payments

6 received by the Trustee for the benefit of Secured Creditor shall be paid to Secured Creditor for

7 the use of the Property up to the date of the dismissal or conversion and the Trustee shall be

8 allowed to take out of the Debtors' payment his Trustee's fee.

9      4. IT IS FURTHER ORDERED THAT in the event Debtors fail to make any of the

10 payments to Secured Creditor or the Trustee as described hereinabove or fail to comply with any

11 conditions of their trust deed obligation, including, but not limited to maintaining insurance on

12 the Property with Secured Creditor listed as an additional loss payee, counsel for Secured

13 Creditor shall file with this Court, and serve by mail upon Debtors, and counsel for Debtors, a

14 declaration stating a breach of this Order has occurred. If within ten (10) days from the date of

15 service of declaration re breach a cure of the breach does not take place (including any payments

16 which become due and owing after the filing of the notice of breach) then Secured Creditor shall

17 have immediate relief from the Automatic Stay without further hearing or order by the court to

18 commence or complete its foreclosure under all defaults, including any pre-petition defaults under

19 any existing foreclosure, and thereafter take possession of the Property. If a late charge becomes

20 due and owing between the time the notice is given and the time the Debtors attempt to cure the

21 breach, the cure of the breach must include the additional late charge. In the event Secured Creditor

22 takes action related to the Debtors' default pursuant to this Order, Secured Creditor is entitled to

23 collect all legal fees incurred as related to such action. A cure of any breach shall also include the

24 sum of $85.00 to reimburse Lender for attorney fees incurred with respect to the breach notice. In

25 the event that secured creditor obtains relief under this paragraph, it shall not be required to wait any

26 additional time to proceed with its foreclosure, the provisions of Civil Code §2924g(d) and Federal

27 Rule of Bankruptcy Procedure 4001(a)(3), being hereby waived.

28      5. IT IS FURTHER ORDERED THAT the terms of this Order shall be incorporated into

1 Debtors' Chapter 13 Plan and any amended Chapter 13 Plan filed by Debtors. In the event that
2 the provisions of this order conflict with the terms of Debtors' Chapter 13 Plan or any Chapter
3 13 Plan filed by Debtors, the terms of this Order shall control.

4       6. IT IS FURTHER ORDERED THAT this Order is to be binding upon the Debtors in
5 the event that this bankruptcy is dismissed and Debtors re-file bankruptcy under any chapter
6 within 180 days from the dismissal of the previous bankruptcy, or in the event that this matter is
7 converted to Chapter 7 or a chapter 11. Any such bankruptcy filing or conversion shall not
8 prevent Secured Creditor from proceeding pursuant to this Order. Alternatively, and without
9 requirement that Secured Creditor proceed in this manner, Secured Creditor may submit an Ex
10 Parte Order Vacating Automatic Stay in any future bankruptcy upon providing telephonic notice
11 to Debtor and Debtor's counsel (if applicable).

12       7. IT IS FURTHER ORDERED THAT subject to entry of this order, Secured Creditor's
13 Motion for Relief will be resolved.
14

15 APPROVED AS TO FORM AND CONTENT:
16                                                DATED: 11/28/07
17
   DAVID A. ARIETTA
18
   Attorney for Debtor
19
   (Faxed signature shall be deemed original)
20                                                DATED: 11/28/07
21   Reilly P. Wilkinson
22   Attorney for Secured Creditor
23
24                        **END OF ORDER**
25                                                11/28/07
26
27
28

| 1 | **COURT SERVICE LIST** |
|---|---|

1

2

3

4

GANICE MORGAN-AUSTIN
5 DARREN DEWAYNE AUSTIN
958 LARKSPUR ROAD
6 OAKLAND, CA 94610

7

DAVID A ARIETTA
8 LAW OFFICES OF DAVID A. ARIETTA
700 YGNACIO VALLEY, RD #200
9 WALNUT CREEK, CA 94596

10

MARTHA G. BRONITSKY
11 P.O. BOX 5004
HAYWARD, CA 94540-5004

12

13 OFFICE OF THE U.S. TRUSTEE/OAK
1301 CLAY STREET #690N
14 OAKLAND, CA 94612

15

JOSHUA L. SCHEER
16 155 N. REDWOOD DRIVE, SUITE 100
SAN RAFAEL, CA 94903
17

18

19

20

21

22

23

24

25

26

27

28

Exhibit "4"

**Entered on Docket**
**January 14, 2008**
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA



1 | DAVID A. ARIETTA, ESQ. (SBN 167865)
LAW OFFICES OF DAVID A. ARIETTA
2 | 700 Ygnacio Valley Road, Suite 200
Walnut Creek, CA 94596
3 | Telephone: (925) 472-8000
Fax: (925) 472-5925
4 |

**Signed: January 11, 2008**



**RANDALL J. NEWSOME**
**U.S. Bankruptcy Judge**

Attorney for Debtors
5 | GANICE MORGAN-AUSTIN
DARREN DWAYNE AUSTIN
6 |

7 |

8 |

9 |

10 | UNITED STATES BANKRUPTCY COURT

11 | NORTHERN DISTRICT OF CALIFORNIA

12 | OAKLAND DIVISION

13 |

14 | In re: ) Case No.: 07-42148 RJN13
)
15 | GANICE MORGAN-AUSTIN ) Chapter 13
DARREN DWAYNE AUSTIN, )
16 | ) **ORDER OF DISMISSAL OF**
Debtors. ) **CHAPTER 13 CASE**
17 | )

18 | Based on the motion of Debtors GANICE MORGAN-AUSTIN and DARREN

19 | DWAYNE AUSTIN to voluntarily dismiss their Chapter 13 case, and good cause appearing

20 | therefore,

21 | IT IS HEREBY ORDERED that the Chapter 13 case of Debtors GANICE MORGAN-

22 | AUSTIN and DARREN DWAYNE AUSTIN, Case Number 07-42148 RJN13, is hereby

23 | dismissed.

24 | * * END OF ORDER * *

25 |

COURT SERVICE LIST

1

2    <u>Debtors</u>
     Darren Austin
3    Ganice Morgan-Austin
     958 Larkspur Road
4    Oakland, CA 94610

5    <u>Debtor's Attorney</u>
6    David A. Arietta
     Law Offices of David A. Arietta
7    700 Ygnacio Valley Road, Suite 200
     Walnut Creek, CA 94596

8
     <u>US Trustee</u>
9    U.S. Trustee's Office
     1301 Clay Street, Suite 690N
10   Oakland, CA 94612

11   <u>Chapter 13 Trustee</u>
12   Martha Bronitsky
     Chapter 13 Trustee
13   PO Box 5004
     Hayward, CA 94540-5004

14

15

16

17

18

19

20

21

22

23

24

25

Exhibit "5"

**Entered on Docket**
**May 22, 2008**
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA



1  SCHEER LAW GROUP, LLP
   SPENCER P. SCHEER #107750

**Signed: May 22, 2008**

2  JOSHUA L. SCHEER #242722
   AUSTIN D. GARNER #184022
3  REILLY D. WILKINSON #250086
   JONATHAN SEIGEL #168224
4  155 N. Redwood Drive, Suite 100
   San Rafael, CA 94903

**LESLIE TCHAIKOVSKY**
**U.S. Bankruptcy Judge**

5  Telephone: (415) 491-8900
   Facsimile: (415) 491-8910
6  PH.061-13448S-B

7  Attorneys for Secured Creditor
   PATELCO CREDIT UNION
8

9              UNITED STATES BANKRUPTCY COURT FOR THE

10              NORTHERN DISTRICT OF CALIFORNIA

11                      OAKLAND DIVISION

12  GANICE MORGAN-AUSTIN and DARREN          Bk. No. 08-40399-LJT

13  DEWAYNE AUSTIN,                          Chapter 13

14          Debtors,                         AMENDED ADEQUATE PROTECTION
                                             ORDER
15

16  MARTHA G. BRONITSKY,                     Date: February 28, 2008
                                             Time: 9:30 AM
17          Trustee.                         Place: Bankruptcy Court
                                                    1300 Clay Street
18                                                  Oakland, CA

19

20

21                          **I. RECITAL**

22          The Hearing on GANICE MORGAN-AUSTIN and DARREN DEWAYNE AUSTIN'S

23  ("DEBTOR'S") motion to extend the automatic stay was scheduled for hearing on February 28,

24  2008 , at 9:30 am before the Honorable Leslie J. Tchaikovsky, United States Bankruptcy Judge.

25  PATELCO CREDIT UNION ("Secured Creditor"), appeared through its counsel REILLY D.

26  WILKINSON of SCHEER LAW GROUP, LLP. All other appearances were read into the record

27  and for GOOD CAUSE appearing, the Court makes its order as follows:

28

## II. ORDER

1. IT IS ORDERED THAT commencing with the March 2008 payment and continuing thereafter, Debtors shall submit to Secured Creditor their regular monthly trust deed payments in the amount of **$3,573.80** ("**Monthly Payments**") on the First Deed of Trust and secured by the real property located at **958 Larkspur Road, Oakland, CA 94610** and which is legally described in the First Deed of Trust attached to Secured Creditor's Motion for Relief from Automatic Stay filed in this matter ("**Property**"). All payments shall be received no later than end of the applicable grace period contained in the Note following the loan payment due date each month as stated in the Note. In addition, Debtor shall comply with all other terms and conditions of their trust deed obligation with Secured Creditor, including a requirement that Debtor maintain any post-petition payments, to keep in effect required insurance policies with Secured Creditor listed as an additional loss payee, and payment of real property taxes and submitting late charges if payments are not received within the applicable grace period specified in the subject Promissory Note. The Monthly Payments shall be sent directly to **PATELCO CREDIT UNION at 156 SECOND STREET, SAN FRANCISCO, CA 94105.**

2. IT IS FURTHER ORDERED THAT in order to show "changed circumstances" Debtors shall provide Secured Creditor with proof of additional employment, other than Mrs. Morgan-Austin's employment as a Real Estate Agent with Montclair Better Homes, no later than the close of business on Friday, March 14, 2007 ("Proof of Additional Employment"). The Proof of Additional Employment shall be sent, via facsimile, to Counsel for Secured Creditor at: **PATELCO CREDIT UNION C/O REILLY D. WILKINSON, SCHEER LAW GROUP, LLP, FAX NO. (415)491-8910.** In the event that the Debtors do not provide Proof of Additional Employment by the aforementioned deadline, Secured Creditor will submit a declaration regarding breach and the Debtors Motion to Extend the Automatic Stay will be denied. In the event that the Proof of Additional Employment is provided as required by this Order, the Automatic Stay shall be extended as to Secured Creditor in accordance with 11 U.S.C. 362(c)(3).

3. IT IS FURTHER ORDERED THAT Debtors shall make a payment to Secured Creditor in the amount of $10,000.00 ("Additional Payment") to be applied to pre-petition delinquency owed to Secured Creditor. Debtors shall make this direct payment to Secured Creditor. The Additional Payment shall be made directly to Secured Creditor by the close of business on April 28, 2009. The Additional Payment shall be sent directly to PATELCO CREDIT UNION, 156 SECOND STREET, SAN FRANCISCO, CA 94105. In the event that the Debtors do not provide Additional Payment by the aforementioned deadline, Secured Creditor will submit a declaration regarding breach and the Debtors Motion to Extend the Automatic Stay will be denied.

4. IT IS FURTHER ORDERED THAT Debtors shall maintain timely payments to the Chapter 13 Trustee for disbursement to Secured Creditor on its claim for pre-petition arrearages. Any payments made by Debtors to the Trustee for the benefit of Secured Creditor, prior to the confirmation of Debtors' plan shall be disbursed to Secured Creditor, notwithstanding the dismissal or conversion of this case. In the event of a dismissal or conversion any payments received by the Trustee for the benefit of Secured Creditor shall be paid to Secured Creditor for the use of the Property up to the date of the dismissal or conversion and the Trustee shall be allowed to take out of the Debtors' payment his Trustee's fee.

5. IT IS FURTHER ORDERED THAT in the event Debtors fail to make any of the payments to Secured Creditor or the Trustee as described in paragraph 1 or 4 hereinabove or fail to comply with any conditions of their trust deed obligation, including, but not limited to maintaining insurance on the Property with Secured Creditor listed as an additional loss payee, counsel for Secured Creditor shall file with this Court, and serve by mail upon Debtors, and counsel for Debtors, a declaration stating a breach of this Order has occurred. If within ten (10) days from the date of service of declaration re breach a cure of the breach does not take place (including any payments which become due and owing after the filing of the notice of breach) then Secured Creditor shall have immediate relief from the Automatic Stay without further hearing or order by the court to commence or complete its foreclosure under all defaults, including

any pre-petition defaults under any existing foreclosure, and thereafter take possession of the Property. If a late charge becomes due and owing between the time the notice is given and the time the Debtors attempt to cure the breach, the cure of the breach must include the additional late charge. In the event Secured Creditor takes action related to the Debtors' default pursuant to this Order, Secured Creditor is entitled to collect all legal fees incurred as related to such action. If Debtors fail to comply with paragraphs 2 or 3, the provisions of those paragraphs will govern.

6. IT IS FURTHER ORDERED THAT the terms of this Order shall be incorporated into Debtors' Chapter 13 Plan and any amended Chapter 13 Plan filed by Debtors. In the event that the provisions of this order conflict with the terms of Debtors' Chapter 13 Plan or any Chapter 13 Plan filed by Debtors, the terms of this Order shall control. This Order is without prejudice to Secured Creditor's right to object to Debtor's Plan or any amended Plan filed with the Court and the entry of this Order does not resolve Secured Creditor's Objections.

7. IT IS FURTHER ORDERED THAT this Order is to be binding in the event that this matter is converted to Chapter 7 or a chapter 11. Any such bankruptcy filing or conversion shall not prevent Secured Creditor from proceeding pursuant to this Order. Alternatively, and without requirement that Secured Creditor proceed in this manner, Secured Creditor may submit an Ex Parte Order Vacating Automatic Stay in any future bankruptcy upon providing telephonic notice to Debtor and Debtor's counsel (if applicable).

APPROVED AS TO FORM AND CONTENT:

/s/ Daniel S. Vaughan                           DATED: May 5, 2008

DANIEL S. VAUGHAN

Attorney for Debtor

(Faxed signature shall be deemed original)

/s/ Reilly D. Wilkinson                          DATED: May 21, 2008

REILLY D. WILKINSON
Attorney for Secured Creditor

**END OF ORDER**

1                 **COURT SERVICE LIST**

2   GANICE MORGAN-AUSTIN
     DARREN DEWAYNE AUSTIN
3   958 LARKSPUR ROAD
     OAKLAND, CA 94610
4

5   DANIEL S. VAUGHAN
     LAW OFFICES OF DANIEL S. VAUGHAN
     1485 ENEA COURT #1330
6   CONCORD, CA 94520

7   MARTHA G. BRONITSKY
     P.O. BOX 5004
8   HAYWARD, CA 94540-5004

9   OFFICE OF THE U.S. TRUSTEE/OAK
     1301 CLAY STREET #690N
10   OAKLAND, CA 94612

11   JOSHUA L. SCHEER
     155 N. REDWOOD DRIVE, SUITE 100
12   SAN RAFAEL, CA 94903

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit "6"

**Entered on Docket**
**June 02, 2009**
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

**Signed: June 02, 2009**

_Leslie Tchaikovsky_
**LESLIE TCHAIKOVSKY**
**U.S. Bankruptcy Judge**

1 | Martha G. Bronitsky
  | Chapter 13 Standing Trustee
2 | 24301 Southland Dr #200
  | Hayward,CA 94545-1541
3 | (510) 266- 5580
  | 13trustee@oak13.com
4 |
5 | Trustee for Debtor(s)
6 |
7 |
8 |
9 |
10 |              UNITED STATES BANKRUPTCY COURT
   |              NORTHERN DISTRICT OF CALIFORNIA
11 |

| 12 In Re | Chapter 13 Case Number: |
|---|---|
| Darren Dewayne Austin | 08-40399-LT 13 |
| 13 Ganice Morgan-Austin | |
| | Hearing: 5/22/2009 |
| 14 | Time: 9:00am |
| | Courtroom: 201 |
| 15 Debtors(s) | |

**ORDER OF DISMISSAL**

16

17    Trustee's Motion to Dismiss Proceedings having come on regularly for hearing this date, and

proof being made to the satisfaction of the Court that notice of said motion thereon was duly

18

served upon the debtor, and that the allegations of trustee's motion are true, and good cause

19

appearing,

20

21    IT IS ORDERED that the debtor's proceedings herein be, and the same hereby are dismissed,

22 and,

23    IT IS FURTHER ORDERED, that the trustee file a final report of her receipts and

24 disbursements in these proceedings and that notice of dismissal be sent to all creditors and

25 debtor.

26                              END OF ORDER

27

28

Darren Dewayne Austin
Ganice Morgan-Austin
958 Larkspur
Oakland,CA 94610

(Debtor(s))

Daniel S Vaughan Atty
1485 Enea Ct #1330
Concord,CA 94520

(Counsel for Debtor)

Patelco Credit Union
156 - 2Nd Street
San Francisco, CA 941053724
(Creditor)

Thomas Caudill Atty
1025 N 4Th St
San Jose, CA 951124942
(Creditor)

T D Service Co
Po Box 11988
Santa Ana, CA 927111988
(Creditor)

Ecast Settlement Corp
Po Box 35480
Newark, NJ 071935480
(Creditor)

Direct Merchants Bank
Po Box 60019
City Of Industry, CA 917160019
(Creditor)

Nelson & Kennard Attys
Po Box 13807
Sacramento, CA 95853
(Creditor)

Ecast Settlement Corp
Po Box 35480
Newark, NJ 071935480
(Creditor)

Patelco Credit Union
Law Offices Of Thomas Caudill
1025 North Fourth St
San Jose, CA 95112
(Creditor)

Ecast Settlement Corp
Po Box 35480
Newark, NJ 071935480
(Creditor)

Portfolio Recovery Assoc Llc
Po Box 12914
Norfolk, VA 23541
(Creditor)

Er Solutions Inc
Po Box 9004
Renton, WA 980579004
(Creditor)

Randolph Bush
3020 El Cerrito Plaza #500
El Cerrito, CA 94530
(Creditor)

Fidelity Investments
100 Crosby Pkwy Kc1F-L
Covington, KY 41015
(Creditor)

Resurgent Capital Services
Po Box 10587
Greenville, SC 296030587
(Creditor)

Gc Services
6330 Gulfton St
Houston, TX 77081
(Creditor)

National Capital Management Llc
8245 Tournament Dr #230
Memphis, TN 38125
(Creditor)

| | | |
|---|---|---|
| 1 | National Capital Management Llc | Wells Fargo Servicing Center |
| | 8245 Tournament Dr #230 | Po Box 94423 |
| 2 | Memphis, TN 38125 | Pcm Pmt Process Mac Q2132-013 |
| | (Creditor) | Albuquerque, NM 871999833 |
| 3 | | (Creditor) |
| 4 | Sallie Mae | |
| | Po Box 7167 | Wells Fargo Bank |
| 5 | Indianapolis, IN 46206 | Po Box 63491 Mac A143 042 |
| | (Creditor) | San Francisco, CA 94163 |
| 6 | | (Creditor) |
| | Citicorp Credit Services Inc | |
| 7 | Po Box 140516 | Roundup Funding Llc |
| | Toledo, OH 436140516 | Po Box 91121 Ms 550 |
| 8 | (Creditor) | Seattle, WA 981119221 |
| 9 | | (Creditor) |
| | Bank Card Services | |
| 10 | Po Box 15137 | Roundup Funding Llc |
| | Wilmington, DE 198865409 | Po Box 91121 Ms 550 |
| 11 | (Creditor) | Seattle, WA 981119221 |
| | | (Creditor) |
| 12 | Vativ Recovery/ Palisades | |
| | Po Box 19249 | Roundup Funding Llc |
| 13 | Sugar Land, TX 77496 | Po Box 91121 Ms 550 |
| | (Creditor) | Seattle, WA 981119221 |
| 14 | | (Creditor) |
| 15 | Vativ Recovery/ Palisades | |
| | Po Box 19249 | Vativ Recovery/ Palisades |
| 16 | Sugar Land, TX 77496 | Po Box 19249 |
| | (Creditor) | Sugar Land, TX 77496 |
| 17 | | (Creditor) |
| | Wells Fargo Bank | |
| 18 | Po Box 63491 Mac A143 042 | Cross Check |
| | San Francisco, CA 94163 | 6119 State Farm Dr |
| 19 | (Creditor) | Rohnert Park, CA 94928 |
| | | (Creditor) |
| 20 | Wells Fargo Bank Na | |
| | Po Box 9210 Recovery Dept | Franchise Tax Board |
| 21 | Des Moines, IA 50306 | Po Box 2952 |
| 22 | (Creditor) | Sacramento, CA 958122952 |
| | | (Creditor) |
| 23 | Wells Fargo Bank | |
| | Po Box 63491 Mac A143 042 | Wells Fargo Bank |
| 24 | San Francisco, CA 94163 | Po Box 31557 Mac B6955-01B |
| | (Creditor) | Billings, MT 59107 |
| 25 | | (Creditor) |
| 26 | Wfnnb | |
| | Po Box 659705 | Wells Fargo Bank |
| 27 | San Antonio, TX 782659705 | Po Box 31557 Mac B6955-01B |
| | (Creditor) | Billings, MT 59107 |
| 28 | | (Creditor) |

| | | |
|---|---|---|
| 1 | Patelco Credit Union | Amo Recoveries Inc |
| | 156 - 2Nd Street | Po Box 926100 |
| 2 | San Francisco, CA 941053724 | Norcross, GA 300106100 |
| | (Creditor) | (Creditor) |
| 3 | | |
| 4 | Wells Fargo Bank | Asg Llc |
| | Po Box 31557 Mac B6955-01B | Po Box 628 |
| 5 | Billings, MT 59107 | Buffalo, NY 14240 |
| | (Creditor) | (Creditor) |
| 6 | | |
| | Wells Fargo Bank | Asset Acceptance/Wells Fargo |
| 7 | Po Box 31557 Mac B6955-01B | Po Box 2036 |
| | Billings, MT 59107 | Warren, MI 480902036 |
| 8 | (Creditor) | (Creditor) |
| 9 | Patelco Credit Union | Asset Accept/Bank Of America |
| 10 | 156 - 2Nd Street | Po Box 2036 |
| | San Francisco, CA 941053724 | Warren, MI 48090 |
| 11 | (Creditor) | (Creditor) |
| 12 | United States Treasury | Associated Recovery Systems |
| | Po Box 21126 | Po Box 469046 |
| 13 | Philadelphia, PA 19114 | Escondido, CA 920469046 |
| | (Creditor) | (Creditor) |
| 14 | | |
| 15 | Franchise Tax Board | Portfolio Recovery Assoc Llc |
| | Po Box 2952 | Po Box 12914 |
| 16 | Sacramento, CA 958122952 | Norfolk, VA 23541 |
| | (Creditor) | (Creditor) |
| 17 | | |
| | Franchise Tax Board | Capital One Bank |
| 18 | Po Box 2952 | Po Box 60024 |
| | Sacramento, CA 958122952 | City Of Industry, CA 917160024 |
| 19 | (Creditor) | (Creditor) |
| 20 | Alameda County Tax Collector | Capital One/Tsys Debt Mgmt |
| | 1221 Oak St  (Bankruptcy Dept) | Po Box 5155 |
| 21 | Oakland, CA  94612 | Norcross, GA  30091 |
| | (Creditor) | (Creditor) |
| 22 | | |
| 23 | David Hoobler | |
| | 3760 Park Blvd Way #31 | |
| 24 | Oakland, CA  94610 | |
| | (Creditor) | |
| 25 | | |
| | Alliance One | |
| 26 | Po Box 23102 | |
| | Southeastern, PA  19398 | |
| 27 | (Creditor) | |
| 28 | | |

| | |
|---|---|
| 1 | Vativ Recovery Solutions Llc |
| | Po Box 19249 |
| 2 | Sugar Land, TX 77496-0000 |
| | |
| 3 | Roundup Funding Llc |
| | Po Box 91121 Ms 550 |
| | Seattle, WA 98111 |
| 4 | |
| | Patelco Credit Union |
| 5 | 156 - 2Nd Street |
| | San Francisco, CA 94105 |
| 6 | |
| | Asset Acceptance Corp |
| 7 | Po Box 2036 |
| | Warren, MI 48090 |
| 8 | |
| | Roundup Funding Llc |
| | Po Box 91121 Ms 550 |
| 9 | Seattle, WA 98111 |
| | |
| 10 | Vativ Recovery Solutions Llc |
| | Po Box 19249 |
| 11 | Sugar Land, TX 77496-0000 |
| | |
| 12 | A T & T Universal |
| | Po Box 6414 |
| | The Lakes, NV 88901-0000 |
| 13 | |
| | Nco Financial Systems |
| 14 | Po Box 15889 |
| | Wilmington, DE 19850 |
| 15 | |
| | Wells Fargo |
| 16 | Po Box 10438 Mac X2505-016 |
| | Des Moines, IA 50306-0000 |
| 17 | |
| | Wells Fargo |
| 18 | Po Box 10438 Mac X2505-016 |
| | Des Moines, IA 50306-0000 |
| 19 | |
| | Wells Fargo |
| | Po Box 10438 Mac X2505-016 |
| 20 | Des Moines, IA 50306-0000 |
| | |
| 21 | Asset Acceptance Corp |
| | Po Box 2036 |
| | Warren, MI 48090 |
| 22 | |
| | Sallie Mae/Usaf |
| 23 | Po Box 6180 |
| | Indianapolis, IN 46206 |
| 24 | |
| | Wells Fargo Card Services |
| 25 | Po Box 9210 Recovery Dept |
| | Des Moines, IA 50306-0000 |
| 26 | |
| | Alameda County Tax Coll-Re Tax |
| 27 | 1221 Oak St (Bankruptcy Dept) |
| | Oakland, CA 94612-0000 |
| 28 | |

1 | Wells Fargo
Po Box 10438 Mac X2505-016
2 | Des Moines, IA 50306-0000

3 | Wells Fargo Card Services
Po Box 30086
Los Angeles, CA 90030
4 |

5 | Portfolio Recovery Associates
Po Box 41067
Norfolk, VA 23541-0000
6 |

7 | Wells Fargo
Po Box 10438 Mac X2505-016
Des Moines, IA 50306-0000

8 |
Sallie Mae/United Student Aid Funds
Po Box 6180 Bkry Unit E3149
9 | Indianapolis, IL 46206

10 | Portfolio Recovery Associates
Po Box 41067
11 | Norfolk, VA 23541-0000

12 | Alameda County Tax Coll-Re Tax
1221 Oak St (Bankruptcy Dept)
Oakland, CA 94612-0000
13 |

14 | Wells Fargo Bank, N.A.
Po Box 10438
Mac X2303-01M
15 | Des Moines, IA 50306-0000

16 | Wells Fargo
Po Box 10438 Mac X2505-016
17 | Des Moines, IA 50306-0000

18 | Wells Fargo
Po Box 10438 Mac X2505-016
Des Moines, IA 50306-0000
19 |

20 | Wells Fargo Bank, N.A.
Po Box 10438
Mac X2303-01M
21 | Des Moines, IA 50306-0000

22 | Wells Fargo Bank
Po Box 5058 Mac P6053-021
Portland, OR 97208-0000
23 |

24 | Wells Fargo Bank
Po Box 5058 Mac P6053-021
Portland, OR 97208-0000
25 |

26 | Wells Fargo Bank
Po Box 5058 Mac P6053-021
Portland, OR 97208-0000
27 |

Portfolio Recovery Associates
Po Box 41067
28 | Norfolk, VA 23541-0000

Wells Fargo
Po Box 10438 Mac X2505-016
Des Moines, IA  50306-0000

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Exhibit "7"

**Entered on Docket**
**December 11, 2009**
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

1 | SPENCER P. SCHEER #107750
JOSHUA L. SCHEER #242722
REILLY D. WILKINSON #250086
2 | JONATHAN SEIGEL #168224
SCHEER LAW GROUP, LLP
3 | 155 N. REDWOOD DRIVE, SUITE 100
SAN RAFAEL, CA 94903
4 | Telephone: (415) 491-8900
Facsimile: (415) 491-8910
5 | PH.061-13448S-E

6 | Attorneys for Secured Creditor
PATELCO CREDIT UNION
7 |

**Signed: December 11, 2009**

**EDWARD D. JELLEN**
**U.S. Bankruptcy Judge**

8 | UNITED STATES BANKRUPTCY COURT FOR

9 | THE NORTHERN DISTRICT OF CALIFORNIA

10 | OAKLAND DIVISION

Bk. No. 09-48628-EDJ

11 | In re:

Chapter 7

12 | DARREN DEWAYNE AUSTIN and GANICE

R.S. No. RDW-235

13 | MORGAN-AUSTIN,

ORDER VACATING AUTOMATIC STAY

14 | Debtors.

Hearing-
15 | Date: November 20, 2009
Time: 10:00 a.m.
16 | Place: Bankruptcy Court
1300 Clay Street, Courtroom 215
17 | Oakland, CA

18 |

19 |

20 |
The hearing on PATELCO CREDIT UNION'S ("Secured Creditor") motion for
21 |
relief from the Automatic Stay was scheduled for hearing on November 20, 2009, at 10:00 a.m.
22 |
before the Honorable Edward D. Jellen, United States Bankruptcy Judge. Secured Creditor
23 |
appeared through counsel, REILLY D. WILKINSON of SCHEER LAW GROUP, LLP. All
24 |
other appearances were read into the record and for GOOD CAUSE appearing, the Court makes
25 |
its order as follows:
26 |
IT IS ORDERED that the Automatic Stay in the above entitled proceeding is
27 |
vacated and extinguished, effective December 15, 2009, to allow Secured Creditor to commence
28 |

1   or complete its non-judicial foreclosure pursuant to all existing defaults, including any pre-

2   petition defaults specified under any existing foreclosure, and thereafter take possession of the

3   real property located at **958 Larkspur Road, Oakland CA 94610,** which is legally described in

4   the Deed of Trust attached to Secured Creditor's motion for relief from automatic stay filed in

5   this matter ("Property").

6             IT IS FURTHER ORDERED that the Automatic Stay as it pertains to Secured

7   Creditor's interest in the subject real Property shall be and is hereby terminated and vacated,

8   effective December 15, 2009, for all purposes, including the prosecution of appropriate

9   foreclosure remedies, without the requirement of further notice or publication, except as may be

10   required by state law.

11             IT IS FURTHER ORDERED that this Order is to be binding upon the Debtors in

12   the event that this bankruptcy is dismissed and Debtors refile bankruptcy under any chapter

13   within 180 days from the dismissal of the previous bankruptcy, or in the event that this matter is

14   converted to Chapter 13. Any such bankruptcy filing or conversion shall not prevent Secured

15   Creditor from proceeding pursuant to this Order.

16             IT IS FURTHER ORDERED that as to TEVIS THOMPSON, Chapter 7 Trustee,

17   the Automatic Stay in the above entitled proceeding is immediately vacated and extinguished as

18   to said Trustee's interest in the real property described above, so that Secured Creditor may

19   commence or complete foreclosure proceedings.

20

21

22

23

24                         ***END OF ORDER***

25

26

27

28

# COURT SERVICE LIST

1

2 **DEBTOR**

3 DARREN AUSTIN & GANICE MORGAN-AUSTIN
958 LARKSPUR
4 OAKLAND, CA 94610

5 **ATTORNEY FOR DEBTORS**

6 MARC VOISENAT
LAW OFFICES OF MARC VOISENAT
7 1330 BROADWAY #1035
OAKLAND, CA 94612
8
**CHAPTER 13 TRUSTEE**
9
TEVIS THOMPSON
10 PO BOX 1110
MARTINEZ, CA 94553
11
**ATTORNEY FOR MOVANT**
12
REILLY D. WILKINSON
13 SCHEER LAW GROUP, LLP
155 N. REDWOOD DRIVE, SUITE 100
14 SAN RAFAEL, CA 94903

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit "8"

1  SCHEER LAW GROUP, LLP
   SPENCER P. SCHEER #107750
2  JOSHUA L. SCHEER #242722
   REILLY D. WILKINSON #250086
3  JONATHAN SEIGEL #168224
   155 N. Redwood Drive, Suite 100
4  San Rafael, CA  94903
   Telephone: (415) 491-8900
5  Facsimile: (415) 491-8910
   PH.061-13448S-G
6
   Attorneys for Lender
7  PATELCO CREDIT UNION

**The following constitutes
the order of the court. Signed September 26, 2011**

Roger L. Efremsky
U.S. Bankruptcy Judge

8                  UNITED STATES BANKRUPTCY COURT FOR THE

9                       NORTHERN DISTRICT OF CALIFORNIA

10                             OAKLAND DIVISION

11
   GANICE MORGAN AUSTIN and                    Bk. No. 11-47516-RLE
12
   DARREN D AUSTIN,                            Chapter 13
13
             Debtors,                          ADEQUATE PROTECTION ORDER
14

15                                             Date: September 7, 2011
                                               Time:  1:30 PM
16                                             Place: Bankruptcy Court
                                                      1300 Clay Street
17                                                    Oakland, CA

18

19

20                                 **I. RECITAL**

21      The Hearing on PATELCO CREDIT UNION'S ("Lender")'s  motion for relief from the

22   automatic stay was scheduled for hearing on September 7, 2011 , at 1:30 pm before the

23   Honorable Roger L. Efremsky, United States Bankruptcy Judge.  Lender appeared through its

24   counsel REILLY D. WILKINSON of SCHEER LAW GROUP, LLP.  All other appearances

25   were read into the record and for GOOD CAUSE appearing, the Court makes its order as

26   follows:

27

28

## II. ORDER

1.      IT IS ORDERED THAT GANICE MORGAN AUSTIN and DARREN D AUSTIN ("Debtors") shall make payment to Lender in the amount of $7,147.60 in good funds ("Initial Payment"). The initial payment represents payment for the months of August 2011 and September 2011on Lender's First Deed of Trust which is secured by real property located at **958 Larkspur Road, Oakland, CA 94610** and which is legally described in the First Deed of Trust attached to Lender's Motion for Relief from Automatic Stay filed in this matter ("**Property**"). The Initial Payment shall be sent no later than September 9, 2011 at 3:30 p.m. to: PATELCO CREDIT UNION c/o SCHEER LAW GROUP, LLP, 155 N. REDWOOD DRIVE, SUITE 100, SAN RAFAEL, CA 94903.

2.      IT IS FURTHER ORDERED THAT commencing with the October 2011 payment and continuing thereafter, Debtors shall submit to Lender their regular monthly trust deed payments in the amount of **$3,573.80 ("Monthly Payments")** on the Property pursuant to the terms of the Note. All payments shall be received no later than end of the applicable grace period contained in the Note following the loan payment due date each month as stated in the Note. In addition, Debtor shall comply with all other terms and conditions of their trust deed obligation with Lender, including a requirement that Debtor maintain any post-petition payments, to keep in effect required insurance policies with Lender listed as an additional loss payee, and payment of real property taxes and submitting late charges if payments are not received within the applicable grace period specified in the subject Promissory Note.

3.      IT IS FURTHER ORDERED THAT Debtors shall deliver $20,000.00 in good funds to the Chapter 13 Trustee by September 9, 2011 ("First Separate Trustee Payment"). If this is not done, relief shall be granted to Lender immediately.

4.      IT IS FURTHER ORDERED THAT Debtors shall turnover the remaining balance of $28,990.00 in good funds to the Chapter 13 Trustee by November 7, 2011 ("Second Separate Trustee Payment"). If this is not done, relief shall be granted to Lender immediately.

1      5.     IT IS FURTHER ORDERED THAT Debtors shall maintain timely payments to

2 the Chapter 13 Trustee for disbursement to Lender on its claim for pre-petition arrearages.

3      6.     IT IS FURTHER ORDERED THAT in the event Debtors fail to make any of the

4 payments to Lender as described in paragraph 1 or 2 hereinabove, counsel for Lender may restore

5 its motion to the court's calendar, upon 10 days written notice, served by mail upon Debtors, and

6 counsel for Debtors.

7      7.     IT IS FURTHER ORDERED THAT either party may bring a motion to modify this

8 order for just cause.

9

10

11 APPROVED AS TO FORM AND CONTENT:

12 /s/ SANDRA BANKS               DATED: September 16, 2011

13 Attorney for Debtor

14

15 /s/ REILLY D. WILKINSON         DATED: September 16, 2011

16 Attorney for Lender

17                        \*\*END OF ORDER\*\*

18

19

20

21

22

23

24

25

26

27

28

| | |
|---|---|
| 1 | <div align="center">**COURT SERVICE LIST**</div> |
| 2 | |
| 3 | **Debtors** |
| 4 | GANICE MORGAN AUSTIN |
| | DARREN D AUSTIN |
| 5 | 958 LARKSPUR ROAD |
| | OAKLAND, CA 94610 |
| 6 | |
| 7 | **COUNSEL FOR DEBTORS** |
| 8 | LAW OFFICES OF SANDRA F. BANKS |
| | 3941 LINCOLN AVE. |
| 9 | OAKLAND, CA 94602 |
| 10 | **CHAPTER 13 Trustee** |
| 11 | |
| | **MARTHA G. BRONITSKY** |
| 12 | P.O. BOX 5004 |
| | HAYWARD, CA 94540-5004 |
| 13 | |
| 14 | **U.S. TRUSTEE** |
| 15 | OFFICE OF THE U.S. TRUSTEE |
| | 1301 CLAY ST. #690N |
| 16 | OAKLAND, CA 94612 |
| 17 | **COUNSEL FOR MOVANT** |
| 18 | |
| | REILLY D. WILKINSON |
| 19 | SCHEER LAW GROUP, LLP |
| | 155 N. REDWOOD DRIVE, SUITE 100 |
| 20 | SAN RAFAEL, CA 94903 |
| 21 | **PARTIES REQUESTING NOTICE** |
| 22 | |
| | THE BUREAUS, INC. |
| 23 | C/O RECOVERY MANAGEMENT SYSTEMS CORP. |
| | 25 SE 2ND AVENUE, SUITE 1120 |
| 24 | MIAMI, FL 33131-1605 |
| | ATTN: RAMESH SINGH |
| 25 | |
| 26 | AMERICREDIT FINANCIAL SERVICES, INC. |
| | PO BOX 183853 |
| 27 | ARLINGTON, TX 76096 |
| 28 | |

Exhibit "9"

```
 1 │ SCHEER LAW GROUP, LLP
   │ SPENCER P. SCHEER #107750
 2 │ JOSHUA L. SCHEER #242722
   │ REILLY D. WILKINSON #250086
 3 │ JONATHAN SEIGEL #168224
   │ 155 Redwood Drive, Suite 100
 4 │ San Rafael, CA 94903
   │ Telephone: (415) 491-8900
 5 │ Facsimile: (415) 491-8910
   │ PH.061-13448S-G
 6 │
   │ Attorneys for Secured Creditor
 7 │ PATELCO CREDIT UNION
 8 │              UNITED STATES BANKRUPTCY COURT FOR THE
 9 │                 NORTHERN DISTRICT OF CALIFORNIA
10 │                             DIVISION
11 │ In re:                              Bk. No. 11-47516 - RLE
12 │ GRANICE MORGAN AUSTIN and DARREN Chapter 13
13 │ AUSTIN,                             R.S. No. RDW - 001
14 │         Debtors.             NOTICE OF TERMINATION OF
15 │                              AUTOMATIC STAY
16 │
17 │
18 │
```

19 TO: DEBTORS, DEBTORS' COUNSEL, THE CHAPTER 13 TRUSTEE, AND

20 ALL INTERESTED PARTIES:

21 NOTICE IS HEREBY GIVEN that, pursuant to the terms of the Order ("Order")

22 entered by the Court on September 26, 2011, the automatic stay pursuant to 11 United States Code section

23 362 is terminated effective November 7, 2011, to allow PATELCO CREDIT UNION (hereinafter

24 "Secured Creditor"), to enforce its state law remedies against the security described in that certain Deed of

25 Trust recorded on January 27, 2004, in the Office of the County Recorder of Alameda County, State

26 of California, with respect to the real property located at **958 Larkspur Road, Oakland, CA 94610** (the

27 "Real Property"), and proceed with post-petition foreclosure remedies in accordance with applicable

28

1  law. A true and correct copy of the Order is attached hereto as Exhibit "A" and incorporated herein by
2  reference.
3           Accordingly, the automatic stay is terminated effective November 8, 2011, and
4  Movant requests that the Chapter 13 Trustee cease making any further payments in regard to Movant's
5  claim filed in this bankruptcy case.
6
7
8                                       SCHEER LAW GROUP, LLP
9
10
   DATED: November 8, 2011                    /s/ REILLY D. WILKINSON
11                                             #250086
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1 | SCHEER LAW GROUP, LLP
SPENCER P. SCHEER #107750
2 | JOSHUA L. SCHEER #242722
REILLY D. WILKINSON #250086
3 | JONATHAN SEIGEL #168224
155 N. Redwood Drive, Suite 100
4 | San Rafael, CA 94903
Telephone: (415) 491-8900
5 | Facsimile: (415) 491-8910
PH.061-13448S-G
6
Attorneys for Lender
7 | PATELCO CREDIT UNION

**The following constitutes
the order of the court. Signed September 26, 2011**

Roger L. Efremsky
U.S. Bankruptcy Judge

8
UNITED STATES BANKRUPTCY COURT FOR THE
9
NORTHERN DISTRICT OF CALIFORNIA
10
OAKLAND DIVISION
11
GANICE MORGAN AUSTIN and | Bk. No. 11-47516-RLE
12
DARREN D AUSTIN, | Chapter 13
13
Debtors, | ADEQUATE PROTECTION ORDER
14
15 | Date: September 7, 2011
Time: 1:30 PM
16 | Place: Bankruptcy Court
1300 Clay Street
17 | Oakland, CA
18
19
20
## I. RECITAL
21
The Hearing on PATELCO CREDIT UNION'S ("Lender")'s motion for relief from the
22
automatic stay was scheduled for hearing on September 7, 2011 , at 1:30 pm before the
23
Honorable Roger L. Efremsky, United States Bankruptcy Judge. Lender appeared through its
24
counsel REILLY D. WILKINSON of SCHEER LAW GROUP, LLP. All other appearances
25
were read into the record and for GOOD CAUSE appearing, the Court makes its order as
26
follows:
27
28



EXHIBIT "A"

## II. ORDER

1.    IT IS ORDERED THAT GANICE MORGAN AUSTIN and DARREN D AUSTIN ("Debtors") shall make payment to Lender in the amount of $7,147.60 in good funds ("Initial Payment"). The initial payment represents payment for the months of August 2011 and September 2011 on Lender's First Deed of Trust which is secured by real property located at **958 Larkspur Road, Oakland, CA 94610** and which is legally described in the First Deed of Trust attached to Lender's Motion for Relief from Automatic Stay filed in this matter ("**Property**"). The Initial Payment shall be sent no later than September 9, 2011 at 3:30 p.m. to: <u>PATELCO CREDIT UNION c/o SCHEER LAW GROUP, LLP, 155 N. REDWOOD DRIVE, SUITE 100, SAN RAFAEL, CA 94903.</u>

2.    IT IS FURTHER ORDERED THAT commencing with the October 2011 payment and continuing thereafter, Debtors shall submit to Lender their regular monthly trust deed payments in the amount of **$3,573.80** ("**Monthly Payments**") on the Property pursuant to the terms of the Note. All payments shall be received no later than end of the applicable grace period contained in the Note following the loan payment due date each month as stated in the Note. In addition, Debtor shall comply with all other terms and conditions of their trust deed obligation with Lender, including a requirement that Debtor maintain any post-petition payments, to keep in effect required insurance policies with Lender listed as an additional loss payee, and payment of real property taxes and submitting late charges if payments are not received within the applicable grace period specified in the subject Promissory Note.

3.    IT IS FURTHER ORDERED THAT Debtors shall deliver $20,000.00 in good funds to the Chapter 13 Trustee by September 9, 2011 ("First Separate Trustee Payment"). If this is not done, relief shall be granted to Lender immediately.

4.    IT IS FURTHER ORDERED THAT Debtors shall turnover the remaining balance of $28,990.00 in good funds to the Chapter 13 Trustee by November 7, 2011 ("Second Separate Trustee Payment"). If this is not done, relief shall be granted to Lender immediately.

1        5.       IT IS FURTHER ORDERED THAT Debtors shall maintain timely payments to

2    the Chapter 13 Trustee for disbursement to Lender on its claim for pre-petition arrearages.

3        6.       IT IS FURTHER ORDERED THAT in the event Debtors fail to make any of the

4    payments to Lender as described in paragraph 1 or 2 hereinabove, counsel for Lender may restore

5    its motion to the court's calendar, upon 10 days written notice, served by mail upon Debtors, and

6    counsel for Debtors.

7        7.       IT IS FURTHER ORDERED THAT either party may bring a motion to modify this

8    order for just cause.

9

10
     APPROVED AS TO FORM AND CONTENT:
11
     /s/ SANDRA BANKS                              DATED: September 16, 2011
12
     Attorney for Debtor
13

14
     /s/ REILLY D. WILKINSON                       DATED: September 16, 2011
15
     Attorney for Lender
16

17                                  **END OF ORDER**

18

19

20

21

22

23

24

25

26

27

28

Case 11-47516    Doc# 43    Filed: 09/26/11    Entered: 09/26/11 15:20:35    Page 3 of 4
                                                3

Case: 11-47516    Doc# 55-1    Filed: 11/08/11    Entered: 11/08/11 17:17:47    Page 3 of
                                                4
Case: 19-41221    Doc# 26-2    Filed: 06/26/19    Entered: 06/26/19 13:59:16    Page 56
                                                of 97

# COURT SERVICE LIST

**Debtors**

GANICE MORGAN AUSTIN
DARREN D AUSTIN
958 LARKSPUR ROAD
OAKLAND, CA 94610

**COUNSEL FOR DEBTORS**

LAW OFFICES OF SANDRA F. BANKS
3941 LINCOLN AVE.
OAKLAND, CA 94602

**CHAPTER 13 Trustee**

MARTHA G. BRONITSKY
P.O. BOX 5004
HAYWARD, CA 94540-5004

**U.S. TRUSTEE**

OFFICE OF THE U.S. TRUSTEE
1301 CLAY ST. #690N
OAKLAND, CA 94612

**COUNSEL FOR MOVANT**

REILLY D. WILKINSON
SCHEER LAW GROUP, LLP
155 N. REDWOOD DRIVE, SUITE 100
SAN RAFAEL, CA 94903

**PARTIES REQUESTING NOTICE**

THE BUREAUS, INC.
C/O RECOVERY MANAGEMENT SYSTEMS CORP.
25 SE 2ND AVENUE, SUITE 1120
MIAMI, FL 33131-1605
ATTN: RAMESH SINGH

AMERICREDIT FINANCIAL SERVICES, INC.
PO BOX 183853
ARLINGTON, TX 76096

1
SCHEER LAW GROUP, LLP
SPENCER P. SCHEER #107750
2 JOSHUA L. SCHEER #242722
REILLY D. WILKINSON #250086
3 JONATHAN SEIGEL #168224
155 N. Redwood Drive, Suite 100
4 San Rafael, CA 94903
Telephone: (415) 491-8900
5 Facsimile: (415) 491-8910
PH.061-13448S-G
6
Attorneys for Secured Creditor PATELCO CREDIT UNION
7

8 UNITED STATES BANKRUPTCY COURT FOR THE

9 NORTHERN DISTRICT OF CALIFORNIA

10 OAKLAND DIVISION

11 In re: Bk. No. 11-47516 - RLE

12 GANICE MORGAN AUSTIN and Chapter 13

13 DARREN D AUSTIN, CERTIFICATE OF SERVICE BY MAIL

14 Debtors.

15

16

17

18

19

20 I, Carolyn Vandyk, declare that:

21 I am employed in the County of Marin, State of California. I am over the age of
18 and am not a party to the within action; my business address is 155 N. Redwood Drive, Suite
22 100, San Rafael, California 94903.

23 On November 8, 2011, I served the within NOTICE OF TERMINATION OF
AUTOMATIC STAY on the interested parties in this action by placing true and correct copies
24 thereof enclosed in a sealed envelope with postage prepaid in the United States Mail at San
Rafael, California, addressed as follows:
25

26

27 ///

28 ///

1  **DEBTORS**

2  GANICE MORGAN AUSTIN
   DARREN D AUSTIN
3  958 LARKSPUR ROAD
4  OAKLAND, CA 94610

5  **COUNSEL FOR DEBTORS**

6  LAW OFFICES OF SANDRA F. BANKS
   3941 LINCOLN AVE.
7  OAKLAND, CA 94602

8
   **CHAPTER 13 TRUSTEE**
9
   MARTHA G. BRONITSKY
10 P.O. BOX 5004
11 HAYWARD, CA 94540-5004

12 **U.S. TRUSTEE**

13 OFFICE OF THE U.S. TRUSTEE
   1301 CLAY ST. #690N
14 OAKLAND, CA 94612

15
   **PARTIES REQUESTING NOTICE**
16
   THE BUREAUS, INC.
17 C/O RECOVERY MANAGEMENT SYSTEMS CORP.
   25 SE 2ND AVENUE, SUITE 1120
18 MIAMI, FL 33131-1605
19 ATTN: RAMESH SINGH

20 AMERICREDIT FINANCIAL SERVICES, INC.
   PO BOX 183853
21 ARLINGTON, TX 76096

22

23 [ X ]  (By Mail [Federal]) I placed such envelope with postage thereon fully prepaid in the
          United States mail at San Rafael, California.
24

25 [  ]  (By Mail [State]) I am readily familiar with Scheer Law Group, LLP's practice for the
          collection and processing of correspondence for mailing with the United States
26        Postal Service; it is deposited with the United States Postal Service on the same
          date in the ordinary course of business at the business address shown above; I am
27        aware that on motion of the party served, service is presumed invalid if the postal
          cancellation date or postage meter date is more than one day after the date of
28        deposit for mailing contained in this declaration.

   [  ]  (By Personal Service) I caused such envelope to be delivered by hand to the addressee(s).

1

[ X ]   Executed on November 8, 2011, at San Rafael, California.

2

[ X ]   (State)  I declare under penalty of perjury under the laws of the State of California that
3         the foregoing is true and correct.

4   [ X ]   (Federal)  I declare that I am employed in the office of a member of the Bar at whose
            direction this service was made.
5

6                                        /s/ Carolyn Vandyk

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit "10"

1  Martha G. Bronitsky
   Chapter 13 Standing Trustee
2  24301 Southland Dr #200
   Hayward,CA 94545-1541
3  (510) 266- 5580
   13trustee@oak13.com
4
5  Trustee for Debtor(s)

**Entered on Docket**
**December 14, 2011**
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

The following constitutes
the order of the court. Signed December 13, 2011

Roger L. Efremsky
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re | Chapter 13 Case Number: |
| Ganice Morgan Austin | 11-47516-RLE13 |
| Darren D Austin | |
| | Hearing: 12/6/2011 |
| | Time: 1:30pm |
| Debtors(s) | Courtroom: |

**ORDER OF DISMISSAL PRIOR TO CONFIRMATION OF PLAN**

GOOD CAUSE APPEARING,

IT IS HEREBY ORDERED that the above entitled Chapter 13 Case case is DISMISSED PRIOR

TO CONFIRMATION of the plan.

**END OF ORDER**

## COURT SERVICE LIST

Ganice Morgan Austin
Darren D Austin
958 Larkspur Road
Oakland, CA 94610

(Debtors)

Americredit Financial Services
Po Box 183853
Arlington, TX 76096

Ecmc
Po Box 75848 Lockbox 8682
St Paul, MN 55175-0848

Franchise Tax Board
Po Box 2952
Sacramento, CA 95812-2952

Patelco Credit Union
Po Box 8020
Pleasanton, CA 94588

Scheer Law Group Llp
155 N Redwood Dr Ste 100
San Rafael, CA 94903

United States Treasury
Po Box 7346
Philadelphia, PA 19101-7346

Wells Fargo Operations Center
Po Box 31557 Mac B6955-01B
Billings, MT 59107

Alameda County Tax Collector
1221 Oak St (Bankruptcy Dept)
Oakland, CA 94612

David Sternberg & Associates
540 Lennon Lane
Walnut Creek, CA 94598

Ecmc
Po Box 75906
Saint Paul, MN 55175

Office Of County Counsel County Of Alameda
1221 Oak St #450
Oakland, CA 94612

Scheer Law Group Llp
155 N Redwood Dr Ste 100
San Rafael, CA 94903

The Bureaus, Inc.
C/O Recovery Management Systems Corporat
25 Se 2Nd Avenue, Suite 1120
Miami, FL 33131-1605

Wells Fargo Bank
Po Box 31557
Mac B6955-01B
Billings, MT 59107-9900

Exhibit "11"



1  Martha G. Bronitsky
   Chapter 13 Standing Trustee
2  Po Box 5004
   Hayward,CA 94540
3  (510) 266- 5580
4  13trustee@oak13.com

5  Trustee for Debtor(s)

**The following constitutes the order of the court.**
**Signed August 21, 2017**

6
7
                                    William J. Lafferty, III
8                                   U.S. Bankruptcy Judge

9
                    UNITED STATES BANKRUPTCY COURT
10                   NORTHERN DISTRICT OF CALIFORNIA

11 In Re                          Chapter 13 Case Number:
12 Ganice Morgan Austin           15-42735-WJL13

13                                Hearing: 8/17/2017
                  Debtors(s)      Time: 1:30pm
14                                Courtroom: 220

15                       **ORDER OF DISMISSAL**

16     Trustee's Motion to Dismiss Proceedings having come on regularly for hearing this date, and proof

17 being made to the satisfaction of the Court that notice of said motion thereon was duly served upon the

18 debtor, and that the allegations of trustee's motion are true, and good cause appearing,

19     IT IS ORDERED that the debtor's proceedings herein be, and the same hereby are dismissed, and,

20
21     IT IS FURTHER ORDERED, that the trustee file a final report of her receipts and disbursements in

22 these proceedings and that notice of dismissal be sent to all creditors and debtor.

23
24
25
                            END OF ORDER
26



## COURT SERVICE LIST

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

Exhibit "12"

Entered on Docket
March 07, 2018
EDWARD J. EMMONS, CLERK
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA



1  **DAVID A. BOONE - SBN 74165**
   **Law Offices of David A. Boone**
2  **1611 The Alameda**
   **San Jose, CA 95126**                  The following constitutes
3  **Telephone: (408) 291-6000**           the order of the court. Signed March 7, 2018
   **Fax: (408) 291-6016**
4
   **ATTORNEYS FOR DEBTORS**
5
                                           Charles Novack
6                                          **U.S. Bankruptcy Judge**
7
8
9
10             **UNITED STATES BANKRUPTCY COURT**
11
               **NORTHERN DISTRICT OF CALIFORNIA**
12
   **IN RE:**                    )    **CHAPTER 13**
13                               )
   **DARREN DWAYNE AUSTIN**      )    **CASE NO.: 17-43173 CN**
14                               )
   **GANICE MORGAN AUSTIN**      )    **Date: January 26, 2018**
15                               )    **Time: 10:00 a.m.**
                **Debtors**      )    **Room: 215**
16                               )
   _____ )    **The Honorable Charles Novack**
17
        **ORDER CONTINUING AUTOMATIC STAY AS TO ALL CREDITORS**
18
19
        Upon Motion of the Debtors, served upon the Chapter 13 Trustee, the Office of the US
20
   Trustee, all creditors, and opposition by Patelco Credit Union, based on the pleadings, the
21
   declaration of the debtors filed in support, the motion of the Debtors is denied as to Ganice
22
   Morgan Austin and,
23
        IT IS HEREBY ORDERED THAT Darren Dwayne Austin shall have the benefit of the
24
   automatic stay as to all creditors.
25
                              **END OF ORDER**
26

1                                     COURT SERVICE LIST

2    Order Electronically Mailed to ECF Registered Participants

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Exhibit "13"

1 | Martha G. Bronitsky
Chapter 13 Standing Trustee
2 | Po Box 5004
Hayward,CA 94540
3 | (510) 266- 5580
4 | 13trustee@oak13.com

5 | Trustee for Debtor(s)

**Entered on Docket
June 20, 2018
EDWARD J. EMMONS, CLERK
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA**



The following constitutes
the order of the court. Signed June 20, 2018

_____
**Charles Novack**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

In Re

Darren Dwayne Austin
Ganice Morgan Austin

Debtors(s)

Chapter 13 Case Number:
17-43173-CN 13

In Proceedings Under
Chapter 13 of the
Bankruptcy Code

## ORDER OF DISMISSAL AFTER DEFAULT OF CHAPTER 13 PLAN PAYMENTS

Upon consideration of the declaration dated June 19, 2018 of Martha G. Bronitsky, Chapter 13

Standing Trustee, filed with this Court attesting to the default of debtor(s) under the terms of the plan;

upon the continuing default of the debtor. The Court being satisfied that the Chapter 13 Trustee served

the debtor(s) and counsel for debtor(s) with a MOTION TO DISMISS CHAPTER 13 CASE FOR

FAILURE TO MAKE PLAN PAYMENTS, and upon good cause shown.


IT IS THEREFORE ORDERED that the above-referenced be dismissed, and that any restraining

orders heretofore entered in this case are hereby vacated. The Trustee shall submit at a later date her

Trustee's Final Report for approval by the Court.

## END OF ORDER



COURT SERVICE LIST

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

Exhibit "14"

Form NDC

## UNITED STATES BANKRUPTCY COURT
### Northern District of California

| In Re: | Darren Dwayne Austin | Case No.: 18–41541 RLE 13 |
|---|---|---|
| | Debtor(s) | Chapter: 13 |

## ORDER AND NOTICE OF DISMISSAL
## FOR FAILURE TO COMPLY

**Notice is hereby given** that the debtor(s) failed to comply with this court's Order to File Required Documents and Notice of Automatic Dismissal , filed on 07/05/2018 . Therefore, it is ordered that this case be **dismissed**.

Dated: 7/19/18                    By the Court:

                                  Roger L. Efremsky
                                  United States Bankruptcy Judge

Exhibit "15"



1  SPENCER P. SCHEER #107750
   JOSHUA L. SCHEER #242722
2  REILLY D. WILKINSON #250086
   JONATHAN SEIGEL #168224
3  SCHEER LAW GROUP, LLP
   155 N. REDWOOD DRIVE, SUITE 100
4  SAN RAFAEL, CA 94903
   Telephone: (415) 491-8900
5  Facsimile: (415) 491-8910
   PH.061-13699S
6
   Attorneys for Defendant
7  PATELCO CREDIT UNION

8                     SUPERIOR COURT OF CALIFORNIA
9                        COUNTY OF ALAMEDA
10                     OAKLAND JUDICIAL DISTRICT
11

12  GANICE MORGAN-AUSTIN; DARREN D.
    AUSTIN,
13                                         CASE NO. RG11607656
             PLAINTIFFS,
14                                         STIPULATION FOR ENTRY OF
                    v.                     JUDGMENT
15

16  PATELCO CREDIT UNION, and DOES 1-50,
    INCLUSIVE,
17
             DEFENDANTS
18

19

20

21     Plaintiffs, GANICE MORGAN-AUSTIN and DARREN D. AUSTIN ("Plaintiffs") and

22  Defendant PATELCO CREDIT UNION ("Defendant"), by and through their respective counsel,

23  hereby stipulate as follows:

24
    ///
25
    ///
26
    ///
27
    ///
28
                        STIPULATION FOR ENTRY OF JUDGMENT
                                       1

# RECITALS

A.    On or about January 16, 2004, Defendant loaned the sum of $760,000.00 to Plaintiffs ("Loan"). The Loan is evidenced by a written Fixed/Adjustable Rate Note dated January 16, 2004 ("Note") and is secured by a Deed of Trust on the real property located at 958 Larkspur Road, Oakland, California ("Property").

B.    Defendant alleges that Plaintiffs are in default on the Loan by failing to make certain loan payments to Defendant and by failing to pay property taxes on the Property. Defendant initiated nonjudicial foreclosure (the "Foreclosure"), have recorded and served a Notice of Default ("NOD") and a Notice of Trustee's Sale ("NOS").

C.    Plaintiffs have filed for bankruptcy three times since the Loan was made. Bankruptcy Case No. 09-48628 which Plaintiffs filed on September 14, 2009 was a Chapter 7 Bankruptcy petition wherein Plaintiffs were granted a discharge. With respect to the most recent bankruptcy, Bankruptcy Case No. 11-47516, filed on July 15, 2011, Defendant obtained an order granting relief from the automatic stay allowing Defendant to move forward with the Foreclosure. Thereafter, Plaintiffs dismissed the bankruptcy action.

D.    On December 9, 2011, Plaintiffs filed the above-captioned action against Defendant (the "Action"). Plaintiffs have alleged in the Action that the Foreclosure is improper because, *inter alia*, the following: Defendant misapplied funds deposited by Plaintiffs and, if the funds had been correctly applied, Plaintiffs would have been current on the Loan; that that Defendant did not comply with Civil Code Section 2923.5; and that the parties orally agreed that Defendant would provide Plaintiffs with a reasonable loan modification. Defendant denies these allegations.

E.    On December 13, 2011, the above-captioned court (the "Court") issued a temporary restraining order ("TRO") enjoining the Foreclosure sale of the Property. Thereafter, the Court issued a tentative ruling stating that it would dissolve the TRO and allow Defendant to sell the Property at the Foreclosure sale.

Case: 19-41221    Doc# 26-2    Filed: 06/26/19    Entered: 06/26/19 13:59:16    Page 77 of 97

F.     The parties desire to provide for a full and final settlement of the claims made by Plaintiffs, or which could have been made by Plaintiffs, in the Action to provide Plaintiffs with a modified loan, and to address the unpaid property taxes on the Property, and to enter into an agreement as to the other matters addressed in this Stipulation.

**AGREEMENT**

1.     The terms and conditions contained in Recitals, hereinabove are incorporated herein by reference.

2.     Any injunction prohibiting the foreclosure sale of the Property shall be immediately dissolved.  Defendant may obtain an order dissolving an injunction through an *ex parte* application with *ex parte* notice to Plaintiffs' counsel.

**Loan Modification and Related Issues**

3.     The Note is modified as follows: The principal balance shall be $851,866.25; the interest rate shall be four percent (4%) fixed for 30 years and the maturity date is extended to April 1, 2042, fully amortizing the Loan.   Monthly principal and interest payments shall be $ 4,068.54 ("P & I Payment").  The increase in principal reflects unpaid monthly Note payments, late fees, property taxes that will be advanced by Defendant, and other fees and charges.  The first payment on the modified Note shall be due and payable on May 1, 2012.  Other than as set forth in this Stipulation, all terms of the Loan shall remain the same.

4.     The Note and the Deed of Trust is further modified as follows: Along with the monthly P&I Payment, Plaintiffs shall pay to Defendant one-twelfth (1/12) of the estimated annual property taxes imposed in connection with the Property ("Property Tax Impound").  Defendant shall estimate the amount of the annual property taxes. The current estimate of the monthly payment for the Property Tax Impound is $1,253.49.  In the event of an overestimate of

STIPULATION FOR ENTRY OF JUDGMENT
3

the amount required for the Property Tax Impound, the excess shall be credited to the next year's Property Tax Impound. In the event of an underestimate of the amount required for the Property Tax Impound, Plaintiffs shall pay the shortfall to Defendant within ten days of written notice. Alternatively, Plaintiffs may prepay to Defendant any or all of these fees.

5.      Plaintiffs shall pay to Defendant the sum of $45,000.00 in certified funds concurrently with this executed Stipulation and, in no case, received by Defendant in hand later than March 8, 2012. The $45,000.00 shall be used by Defendant to pay outstanding property taxes on the Property, shall not be applied to the balance owing on the Note, and shall not be refundable to Plaintiffs or credited to the Note principal under any circumstances, except that in the event that Wells Fargo Bank fails to subordinate its liens, the $45,000 shall be returned to Plaintiffs. Defendant shall pay the balance of the property taxes currently owing on the Property.

6.      Plaintiffs shall provide Defendant, on an annual basis, with proof of insurance on the Property in accordance with the terms of the Deed of Trust. Said insurance policy shall name Defendant as an additional insured. As a condition to the effectiveness of this Stipulation, Plaintiffs shall provide Defendant, along with this executed Stipulation, with proof acceptable to Defendant that the Property is currently insured.

7.      As a condition to the effectiveness of this Stipulation, Plaintiffs shall complete in full and provide all information requested in the five (5) modification request documents transmitted to Plaintiffs' counsel on February 29, 2012.

8.      As a condition to the effectiveness of this Stipulation, Wells Fargo Bank shall subordinate its liens on the Property to the Deed of Trust as modified pursuant to this Stipulation. The form of the subordination shall be acceptable to Defendant and its title insurer.

STIPULATION FOR ENTRY OF JUDGMENT
4

9.    Within ten days of the full execution of this Stipulation, Plaintiffs shall withdraw the "Notice of Pending Action" they have recorded against the Property.

10.    No later than March 15, 2013, Plaintiffs shall have removed from record title the judgment liens recorded against the Property.

11.    No later than March 15, 2013, the liens identified as items 11 and 13 through 21 in the Preliminary Report attached hereto as Exhibit A shall be released from the Property.

12.    Other than as set forth in this Stipulation, Borrower shall comply with all terms and conditions of the Note and the Deed of Trust. All payments made under this Stipulation are accepted by Defendant without prejudice to the existing Foreclosure of the Property and Defendant's acceptance shall never constitute a waiver or modification of Defendant's lien position on the Property or any of Defendant's rights under the Note or the Deed of Trust, including, but not limited to Lender's right to enforce the maturity date under the Note.

13.    TIME IS OF THE ESSENCE AS TO ALL PERFORMANCE UNDER THIS STIPULATION, THE NOTE, AND THE DEED OF TRUST.

**Foreclosure and Forbearance**

14.    Defendant shall postpone the current Foreclosure so long as Plaintiffs fully and timely comply with all terms of this Stipulation, the Note, or the Deed of Trust. In the event that Plaintiffs fail to fully and timely comply with all terms of this Stipulation, the Note, or the Deed of Trust up to and including March 1, 2013, Defendant may immediately proceed to conclude the current Foreclosure (i.e., hold a foreclosure sale of the Property under the currently recorded NOD and NOS); provided, however, that Defendant may record a new NOS prior to March 31, 2013 and sell the Property without recording or serving a new NOD or having to again comply with Civil Code § 2923.5. In the event that Plaintiffs prepay all mortgage payments, fully comply with all

STIPULATION FOR ENTRY OF JUDGMENT
5

terms of Paragraphs 9 and 10 by causing all liens referenced therein to be removed, and pay all property taxes owed through March 1, 2013 before this date, then the Notice of Default shall be immediately rescinded. In the event that Defendant seeks to foreclose on the Property based on a breach that takes place after March 1, 2013, Defendant shall be required to record and serve a new Notice of Default and Notice of Sale.

15. No payments received by Defendant under this Stipulation shall waive or modify Defendant's existing or future foreclosure rights or any other rights of Defendant under this Stipulation, the Note or the Deed of Trust. In the event that Defendant accepts payments after the date that they are due under this Stipulation, such action may never be deemed a waiver of Defendant's rights under this Agreement.

16. **It is the intent of the parties that Plaintiffs shall have no defense to foreclosure (either the current Foreclosure or Defendant later reinstituting a new foreclosure) based on acts or omissions taking place prior to the execution of this Stipulation.** In the event that Defendant seeks to foreclose on the Property (either the current Foreclosure or Defendant later reinstituting a new foreclosure), Plaintiffs shall not seek to enjoin or otherwise prevent or defend against the foreclosure for any reason other than acts or omissions that took place subsequent to the execution of this Stipulation. For example, Plaintiffs shall not defend against foreclosure, and waive such defense, based on allegations that they made payments prior to the execution of this Stipulation, that Defendant made promises of a loan modification or forbearance prior to the execution of this Stipulation, that Defendant did not comply with Civil Code Sections 2923.5 or 2924, *et seq,* prior to the execution of this Stipulation, or any other act or omission taking place prior to the execution of this Stipulation. This Paragraph 15 is not limited to the current Foreclosure based on the current NOD and NOS,

Case: 19-41221   Doc# 26-2   Filed: 06/26/19   Entered: 06/26/19 13:59:16   Page 81 of 97

but also Defendant's subsequent institution of foreclosure based on a new NOD and NOS. In accordance with this paragraph, Plaintiffs are releasing all claims against Defendant as set forth below.

17.     With respect to the current Foreclosure, Plaintiffs acknowledge and agree that Defendant has fully complied with all contractual and legal requirements for the Foreclosure, including but not limited to Civil Code Section 2923.5 and Civil Code Section 2924, *et seq.,* and waive all defenses to foreclosure based on noncompliance with those statutes and the Note and Deed of Trust or anything else. This includes, but is not limited to any defense that the NOD or NOS have not been recorded, served, posted, and published in full compliance with the Note, the Deed of Trust, and the law, or any other defects connected with the current Foreclosure.

18.     In the event that a foreclosure sale is held up to and include March 31, 2013, and Defendant, or its assignee, seeks to recover possession of the Property from Plaintiffs, Plaintiffs stipulate to the immediate entry of judgment in Defendant's favor and against Plaintiffs for possession of the Property and the issuance of a Writ of Possession. Defendant may obtain a judgment of possession through entry of judgment in this Action on an *ex parte* basis with *ex parte* notice given to Plaintiffs' counsel. Alternatively, Plaintiffs stipulate to the immediate entry of judgment in Defendant's favor and against Plaintiffs for possession of the Property on an *ex parte* basis with *ex parte* notice given to Plaintiffs' counsel in an unlawful detainer action or an ejectment action ("Eviction Action") filed by Defendant or its assignee against Plaintiffs and this Stipulation may be used by Defendant as the basis for obtaining an immediate judgment in the Eviction Action. No applications or motions for relief from judgment or forfeiture, or for stay of judgment or eviction shall be sought or permitted in this Action or in an Eviction Action. After any abandonment by or eviction of Plaintiffs from the Property, all property remaining on the

Case: 19-41221    Doc# 26-2    Filed: 06/26/19    Entered: 06/26/19 13:59:16    Page 82 of 97

Property shall be deemed to be worth less than $100.00, to have been abandoned, and Defendant may dispose of such property without further notice to Plaintiffs.

**Mutual Release**

19.     All parties hereto, for themselves, their officers, directors, shareholders, agents, predecessors, successors, and assignees, hereby mutually release and discharge all parties hereto, and their officers, directors, shareholders, agents, predecessors, successors and assigns of each other, from any and all claims, causes of action, rights, theories, contentions, demands, obligations, losses, costs, expenses, attorneys' fees, liabilities and indemnities of any nature whatsoever, whether based on contract, tort, statute or other legal or equitable theory of recovery whether known or unknown, liens or causes of action of any types or character whatsoever insofar as any of the same relate to, arise out of, or could relate to or could arise out of the facts and circumstances, whether pleaded or not, giving rise to the Action, including but not limited to the Loan and the Foreclosure.

20.     The parties hereto expressly waive all rights under California Civil Code section 1542, which provides as follows:

"Certain Claims Not Affected by General Release--
A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

The parties hereto acknowledges that they are aware that they may hereafter discover claims presently unknown or unsuspected, or facts in addition to or different from those that are known or believed to be true, as to the matters released herein. Nevertheless, it is the intention of the parties hereto, through this Stipulation, to fully, finally and forever release all such matters and all claims

STIPULATION FOR ENTRY OF JUDGMENT
8

related thereto that do now exist, may exist, or heretofore have existed (subject to the limitations set forth herein). In furtherance of such intention, the release herein given shall be and remain in effect as a full and complete release of such matters, notwithstanding the discovery or existence of any such matters, notwithstanding the discovery or existence of any such additional or different claims or facts related thereto by the parties hereto. In entering into this Agreement, the parties herein do not rely on any statement, representation or promise of any other party, except as expressly stated in this Agreement.

21. **EXCLUSIONS FOR RELEASE:** Notwithstanding any provision herein otherwise, the aforesaid release excludes all those claims arising out of any breach of Plaintiffs' obligations under this Stipulation, the Note, and the Deed of Trust.

22. **DISMISSAL OF THIS ACTION:** This Action shall be dismissed with prejudice no later than March 31, 2013. However, the terms of this Stipulation shall be binding on the parties even after this Action is dismissed and Plaintiffs shall note on the dismissal that the court reserves jurisdiction to enforce the terms of the settlement agreement pursuant to C.C.P. Section 664.6.

23. **BANKRUPTCY:** Plaintiffs agree that if they file for bankruptcy again or reopen a prior bankruptcy, they will not seek to modify the terms of this Stipulation in a proposed reorganization plan, that an additional bankruptcy filing prior to April 1, 2013 would be in bad faith, and that, in the event they file for bankruptcy prior to April 1, 2013, they will not oppose an ex parte application filed by Defendant for relief from the automatic stay in order to enforce the terms of this Stipulation.

24. **MISCELLANEOUS:**

      A. Integration and Law. This Stipulation along with the Note and the Deed of Trust contains the entire agreement between the parties, and its terms are contractual

Case: 19-41221    Doc# 26-2    Filed: 06/26/19    Entered: 06/26/19 13:59:16    Page 84 of 97

and not a mere recital. This Stipulation is intended to supersede all prior agreements between the parties. This Stipulation may not be modified except by a writing signed by all parties. This Stipulation shall be construed and enforced according to the laws of the State of California.

B. Presumption of Drafting. This Stipulation was drafted with the cooperation counsel for Plaintiffs and Defendant. In the event that there is any ambiguity in any provision thereof, said ambiguity shall not be construed against one party over the other.

C. Interpretation and Severability. It is agreed that if any provision of this Agreement or the application of any provision to any person or any circumstance shall be determined to be invalid or unenforceable, such determination shall not affect any other provisions of this Stipulation or the application of such provision to any other person or circumstance, all of which other provisions shall remain in full force and effect. It is the intention of the parties that if any provision of this Stipulation is capable of two constructions one of which would render the provision valid, the provision shall have the meaning which renders it valid.

D. Counterparts. This Stipulation may be signed in counterparts and a copy shall be deemed to be an original.

E. Expiration. Unless this Agreement is executed by both Plaintiffs and received by counsel for Defendant signed on or before close of business on March ___ 2012, it shall be unenforceable and confer no rights or obligations on either of the parties.

Case: 19-41221   Doc# 26-2   Filed: 06/26/19   Entered: 06/26/19 13:59:16   Page 85
of 97

F. This Stipulation shall be fully binding and enforceable by entry of a judgment in accordance with Code of Civil Procedure section 664.6. The Superior Court of the County of Alameda shall be expressly authorized to enforce the rights, duties, and obligations of the parties under this Stipulation. The availability of such remedy shall not alter or limit any other remedy available to the parties, in law or in equity.

DAVID M. STERNBERG & ASSOCIATES

DATED: _____

David Sternberg
Attorneys for Plaintiff

SCHEER LAW GROUP, LLP

DATED: 3/8/12 _____

By: JONATHAN SEIGEL
Attorneys for Defendant
PATELCO CREDIT UNION

**AGREED:**

DATED: _____

GANICE MORGAN-AUSTIN

DATED: _____

DARREN D. AUSTIN

STIPULATION FOR ENTRY OF JUDGMENT
11

PATELCO CREDIT UNION

DATED:

By: **Lance Nelson**
Its: Real Estate Collections Manager

STIPULATION FOR ENTRY OF JUDGMENT
12

F. This Stipulation shall be fully binding and enforceable by entry of a judgment in accordance with Code of Civil Procedure section 664.6. The Superior Court of the County of Alameda shall be expressly authorized to enforce the rights, duties, and obligations of the parties under this Stipulation. The availability of such remedy shall not alter or limit any other remedy available to the parties, in law or in equity.

DAVID M. STERNBERG & ASSOCIATES

DATED: 3-7-2012

David Sternberg
Attorneys for Plaintiff

SCHEER LAW GROUP, LLP

DATED:

By: JONATHAN SEIGEL
Attorneys for Defendant
PATELCO CREDIT UNION

**AGREED:**

DATED: 3-7-2012

GANICE MORGAN-AUSTIN

DATED:

DARREN D. AUSTIN

STIPULATION FOR ENTRY OF JUDGMENT
11

1  SPENCER P. SCHEER #107750
   JOSHUA L. SCHEER #242722
2  REILLY D. WILKINSON #250086
   JONATHAN SEIGEL #168224
3  SCHEER LAW GROUP, LLP
   155 N. REDWOOD DRIVE, SUITE 100
4  SAN RAFAEL, CA 94903
   Telephone: (415) 491-8900
5  Facsimile: (415) 491-8910
   PH.061-13699S
6
   Attorneys for Defendant
7  PATELCO CREDIT UNION

8
                    SUPERIOR COURT OF CALIFORNIA
9
                       COUNTY OF ALAMEDA
10
                     OAKLAND JUDICIAL DISTRICT
11

12 GANICE MORGAN-AUSTIN; DARREN D.
   AUSTIN,
13                                          CASE NO. RG11607656
            PLAINTIFFS,
14                                          ADDENDUM TO STIPULATION FOR
                 v.                         ENTRY OF JUDGMENT
15

16 PATELCO CREDIT UNION; and DOES 1-50,
   INCLUSIVE,
17
            DEFENDANTS
18

19

20

21      Plaintiffs, GANICE MORGAN-AUSTIN and DARREN D. AUSTIN ("Plaintiffs") and

22 Defendant PATELCO CREDIT UNION ("Defendant") hereby enter into the Addendum To

23 Stipulation for Entry of Judgment ("Addendum") and hereby stipulate as follows:

24                              RECITALS

25
        A.      This Addendum is incorporated into and made a part of the Stipulation for Entry
26
27 of Judgment ("Stipulation") filed in this action. In the event of any conflict between the terms of

28
                ADDENDUM TO STIPULATION FOR ENTRY OF JUDGMENT
                                    1

1  the Stipulation and the terms of this Addendum, the terms of this Addendum shall prevail.

2  Capitalized terms defined in the Stipulation shall retain the same meanings in this Addendum.

3       B.    Subsequent to the parties entering into the Stipulation, Defendant PATELCO

4  CREDIT UNION ("PATELCO") provided Alameda County with payment of $114,890.33 which

5  was the amount required to pay off all property taxes owing in connection with the real property

6  located at the Property. After that payment was made, Alameda County's website stated that

7
8  $15,041.92 was still owing and on May 7, 2012, PATELCO sent Alameda County another check

9  (the "Check") in that amount.

10       C.    Alameda County did not cash the Check, but instead sent it to Plaintiffs, not

11  PATELCO. On May 30, 2012, Plaintiff GANICE MORGAN-AUSTIN deposited the check into

12  their account at PATELCO and had two checks, one in the amount of $14,297 and the other in

13  the amount of $747, made payable to MORGAN-AUSTIN which have since been cashed.

14  PATELCO's teller who allowed the Check to be deposited was unaware of the purpose of the

15
16  Check, the Stipulation, or the history of the subject loan, this litigation, and the like.

17       D.    When others at PATELCO learned that MORGAN-AUSTIN deposited the Check

18  into her account and withdrew the proceeds, they contacted MORGAN-AUSTIN and demanded

19  that she immediately repay the funds. MORGAN-AUSTIN, through counsel, advised that she no

20  longer has the funds, but has agreed to repay the funds as set forth below.

21       E.    MORGAN-AUSTIN alleges that she believed the funds were her funds as a

22  refund of earlier taxes.

23

24  **AGREEMENT**

25       1.    The terms and conditions contained in Recitals, hereinabove are incorporated herein

26  by reference.

27

28
ADDENDUM TO STIPULATION FOR ENTRY OF JUDGMENT
2

2. Plaintiffs shall pay to PATELCO the sum of $5,013.97 **received by PATELCO** no later than July 30, 2012, $5,013.97 **received by PATELCO** no later than December 10, 2012, and $5,013.97 **received by PATELCO** no later than April 10, 2013 (the "Payments"). TIME IS OF THE ESSENCE. If Plaintiffs fail to timely make all of the Payments, Defendant may immediately proceed to conclude the current Foreclosure (i.e., hold a foreclosure sale of the Property under the NOD and the NOS that has been recorded since the parties entered into the Stipulation).

3. Plaintiffs' obligation to make the Payments is excluded from the mutual release entered into as part of the Stipulation.

4. Other than as set forth herein, all of the terms of the Note, the Deed of Trust, and the Stipulation remain the same. The parties agree that the Court retains jurisdiction to enforce the terms of the Stipulation and this Addendum pursuant to C.C.P. Section 664.6.

DAVID M. STERNBERG & ASSOCIATES

DATED: 7/3/12

David Sternberg Grace Barker
Attorneys for Plaintiff

SCHEER LAW GROUP, LLP

DATED: 7/6/12

By: JONATHAN SEIGEL
Attorneys for Defendant
PATELCO CREDIT UNION

**AGREED:**

DATED:

GANICE MORGAN-AUSTIN

ADDENDUM TO STIPULATION FOR ENTRY OF JUDGMENT
3

1  DATED: _____    _____
                              DARREN D. AUSTIN
2

3                            PATELCO CREDIT UNION
4

5  DATED: _____
                           By:   _____
6                          Its:  David Luss
7                                Vice-President
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
              ADDENDUM TO STIPULATION FOR ENTRY OF JUDGMENT
                                  4

Exhibit "16"

# REPAYMENT PLAN AGREEMENT

*BANKRUPTCY ADVISEMENT: If your original loan obligation has been discharged in bankruptcy proceedings, or is currently subject to a bankruptcy automatic stay, this Repayment Plan Agreement should not be construed as an attempt to collect a debt or to impose personal liability for such obligation. This Repayment Plan Agreement is being sent at your request to avoid foreclosure and any payments you make on the referenced loan should be made solely to preserve your rights in the property given to secure your loan. If you have questions or concerns, please consult your bankruptcy attorney.*

**Borrower Name(s)**: Ganice Morgan-Austin & Darren Austin
**Account Number and Suffix**: 274325-46

Based on a careful review of the information you provided to us, you have been approved for Repayment Plan. Under this repayment plan, you are provided with additional time to repay past due amounts on your mortgage, by making supplemental payments in addition to your regular semi-monthly payments.

As of 11/28/2018 the total past due amount on your mortgage is $173,335.80. Your total past due amount is now part of your new total semi-monthly payment amount listed in the Repayment Plan Terms section below.

Please note that the total amount required to bring your mortgage current noted above includes $9,876.00 for expenses we have incurred in connection with your mortgage obligations. These expenses may include attorney fees and costs, property preservation expenses, inspections, and/or other expenses resulting from your failure to pay your mortgage on time.

## Repayment Plan Terms

Under your Repayment Plan, you must make the **Total Monthly Payment of $14,399.99** and divide the payment into 2 semi-monthly payment in the amount of **$7,200.00** each and every **1st** and **16th** of the month beginning on the First Payment Due Date 12/1/2018 then on every 1st and 16th of each month during the term of the Repayment Plan which will last for **48** payments or **24 months**.

- ➢ Regular Monthly Payment: $5,448.66 until December 2018. Beginning January 1, 2019, the regular monthly payment is $7,254.41 because of the negative escrow account. (If your mortgage is an adjustable rate mortgage or if your monthly payment changes, this amount is subject to change based on the terms of your mortgage.)
- ➢ Supplemental Monthly Payment: **$7,145.58**. This is the amount you'll pay each month toward your total past due amount and is in addition to your Regular Monthly Payment.
- ➢ Total Monthly Payment Amount: **$14,399.99**. This is the new monthly mortgage payment amount that you'll pay during the term of the Repayment Plan. The final semi-monthly repayment amount will be $7,235.88.

Case: 19-41221   Doc# 26-2   Filed: 06/26/19   Entered: 06/26/19 13:59:16   Page 94
of 97

➢ First Payment Due Date: 12/1/18. This is the date by which we must receive your first new Total Monthly Payment Amount. You must make your Total Semi-Monthly Payment Amount every 1st and 15th day of each month during the term of the Repayment Plan.

➢ Term of Repayment Plan: **48 payments** or **24 months**. This is the number of months that you have to pay off your total past due amount. If you make all of your new Total Monthly Payment Amounts on time, you will bring your mortgage current (assuming no additional fees or charges accrue during this time).

➢ The repayment amount is subject to change if your escrow payment changes.

Your payment schedule is as follows

|  | Total Payment Amount | Due Date |
|---|---|---|
| 1 | $7,200.00 | 12/1/18 |
| 2 | $7,200.00 | 12/16/18 |
| 3 | $7,200.00 | 1/1/19 |
| 4 | $7,200.00 | 1/16/19 |
| 5 | $7,200.00 | 2/1/19 |
| 6 | $7,200.00 | 2/16/19 |
| 7 | $7,200.00 | 3/1/19 |
| 8 | $7,200.00 | 3/16/19 |
| 9 | $7,200.00 | 4/1/19 |
| 10 | $7,200.00 | 4/16/19 |
| 11 | $7,200.00 | 5/1/19 |
| 12 | $7,200.00 | 5/16/19 |
| 13 | $7,200.00 | 6/1/19 |
| 14 | $7,200.00 | 6/16/19 |
| 15 | $7,200.00 | 7/1/19 |
| 16 | $7,200.00 | 7/16/19 |
| 17 | $7,200.00 | 8/1/19 |
| 18 | $7,200.00 | 8/16/19 |
| 19 | $7,200.00 | 9/1/19 |
| 20 | $7,200.00 | 9/16/19 |
| 21 | $7,200.00 | 10/1/19 |
| 22 | $7,200.00 | 10/16/19 |
| 23 | $7,200.00 | 11/1/19 |
| 24 | $7,200.00 | 11/16/19 |
| 25 | $7,200.00 | 12/1/19 |
| 26 | $7,200.00 | 12/16/19 |
| 27 | $7,200.00 | 1/1/20 |
| 28 | $7,200.00 | 1/16/20 |
| 29 | $7,200.00 | 2/1/20 |

| 30 | $7,200.00 | 2/16/20 |
| 31 | $7,200.00 | 3/1/20 |
| 32 | $7,200.00 | 3/16/20 |
| 33 | $7,200.00 | 4/1/20 |
| 34 | $7,200.00 | 4/16/20 |
| 35 | $7,200.00 | 5/1/20 |
| 36 | $7,200.00 | 5/16/20 |
| 37 | $7,200.00 | 6/1/20 |
| 38 | $7,200.00 | 6/16/20 |
| 39 | $7,200.00 | 7/1/20 |
| 40 | $7,200.00 | 7/16/20 |
| 41 | $7,200.00 | 8/1/20 |
| 42 | $7,200.00 | 8/16/20 |
| 43 | $7,200.00 | 9/1/20 |
| 44 | $7,200.00 | 9/16/20 |
| 45 | $7,200.00 | 10/1/20 |
| 46 | $7,200.00 | 10/16/20 |
| 47 | $7,200.00 | 11/1/20 |
| 48 | $7,235.88 | 11/16/20 |

## Additional Repayment Plan Information and Legal Notices

**We will not proceed to foreclosure sale during this repayment plan, provided you are complying with the terms of the repayment plan:**

> ➢ **Any pending foreclosure action or proceeding that has been suspended may be resumed if you fail to comply with the terms of the plan.**
> ➢ You agree that we will hold the Supplemental Monthly Payment in your unapplied funds account until sufficient funds are in the account to pay your oldest delinquent monthly payment. You also agree that we will not pay you interest on the amounts held in the account. If any money is left in this account at the end of the repayment plan, those funds will be posted to your account to reduce your principal balance.
> ➢ Our acceptance and posting of your payment during the repayment plan will not be deemed a waiver of the acceleration of your loan (or foreclosure actions) and related activities, and shall not constitute a cure of your default under your loan unless such payments are sufficient to completely cure your entire default under your loan.

**Your current loan documents remain in effect; however, you may make the repayment plan payment instead of the payment required under your loan documents:**

Case: 19-41221   Doc# 26-2   Filed: 06/26/19   Entered: 06/26/19 13:59:16   Page 96 of 97

- ➤ You agree that all terms and provisions of your current mortgage note and mortgage security instrument remain in full force and effect and you will comply with those terms; and that nothing in the repayment plan shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the loan documents.
- ➤ Faxed or electronic signature(s) on this document will have the same legal effect as an original signature.

I have read, understood and agree to the foregoing terms and conditions:

X
_____

**Borrower's Signature**                    **Date**

X
_____

**Co-Borrower's Signature**                 **Date**

X
_____

**Patelco Credit Union Signature**          **Date**